No. 14,107.

STATE OF LOUISIANA VS. CHARLES G. CAIN.

SYLLABUS.

1.  The defendant in a criminal case who takes the stand as a witness in his own behalf may be cross-examined in the same manner as any other witness in such case, and where he testifies, in his direct examination, that he wrote to a person, and professes to state what he wrote, he may be interrogated, on cross-examination, as to the number, dates, and contents of the letters. Nor has he the right to demand, as a condition precedent to answering such questions, that the letters, themselves, in the possession of the prosecuting officer, shall be submited to the inspection of himself and his counsel.

2.  Construing Section 800, R. S., with Act No. 93 of 1898, the necessary, and only effect, is, that the penalty provided oy the act is substituted for that provided by the first paragraph of the section.

√ 3.  If a statute has made it criminal to do any act under particular circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it.

4.  What comes by way of *proviso* in a statute must be insisted on by way of defense by the party accused, though, where the exceptions are in the enacting part of the law, it must appear in the charge that the defendant does not fall within them.

5.  Where a defendant, prosecuted for bigamy, undertakes to defend by showing that he contracted the second marriage in the honest belief that the first had been dissolved by a decree of divorce, the burden of proof rests upon him to show that he had reasonable grounds (his mental capacity and surroundings considered) for such belief and that he did, in fact, so believe. It is not enough that he should merely create a doubt upon that subject in the minds of the jury.

APPEAL from the Criminal District Court, Parish of Orleans.— Chretien, J.

*Walter Guion,* Attorney General, and *J. Ward Gurley,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*Chandler C. Luzenberg,* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J.  The defendant was convicted of bigamy and appeals from a sentence of imprisonment at hard labor.

It appears that he had been married in Georgia; that his wife had sued him for a divorce and that there had been a judgment rejecting

State vs. Cain.

her demand; that the defendant had thereafter come to New Orleans and contracted another marriage, and that, during a subsequent absence from this city, his second wife obtained some information as to his status, which led her and her friends to communicate with him and to become very insistent in demanding an explanation; and, the explana= tion not proving satisfactory, to instigate this prosecution. The special defense was set up that the defendant acted in good faith and in the honest belief that he was divorced from his first wife; and, having taken the stand, he testified that upon learning that the judgment in his favor in the action brought by her had not divorced him, he brought suit on his own account, but that his second wife, or her friends, kept pressing him for explanations, which he could not make by correspondence; and, having decided to return to New Orleans and explain in person, he wrote to his second wife that he "was coming to New Orleans." This statement was made in his examination in chief,· and in answer to a question propounded to him by his counsel, the impression conveyed, as we read the testimony, being, that he wrote but once and only to convey the information mentioned, though it may well be that it was not the intention of the witness to convey that impression. Howbeit, upon the cross-examination, he was interrogated and gave answers as follows: "Q. You say that you wrote to your wife? A. Yes, sir. Q. Do you recollect about what day you wrote? A. I wrote her a letter every day; sometimes two or three. Q. You don't remember the substance? A. I don't know if I could call them from memory right off." It appears that the prosecuting officer, whilst asking these questions, had the letters referred to by the witness in his possession, and the defendant's counsel objected to the defendant's being interrogated as to their contents unless they were submitted to him for inspection, and he objected further that on his examination in chief the defendant was not asked and did not testify as to the letters or their contents, or as to any fact that he had written to his wife, save that he was coming to New Orleans; that he was not examined in chief as to any fact that he had stated in conversation with his second wife, and that the letters were not in evidence; and, these objections having been overruled, bills of exception were taken.

We find no error in this ruling. The defendant, having voluntarily taken the stand, was subject to cross-examination as any other witness in his behalf would have been. It has been held in this State that a witness for the defense in a criminal case can be cross-examined

only with respect to statements made in his examination in chief, but, even under this rule, the defendant having testified in his direct examination, not only that he had written to his wife, but, in part, what he had written to her, cross-examination as to the number of letters, the dates and the contents was germane to that statement. Equally correct was the ruling of the judge *a quo* in denying the demand of the defendant that the letters in question, in the possession of the prosecuting officer, should be submitted to the defendant for inspection as a condition precedent to the cross-examination. The defendant had given testimony upon which the prosecuting officer had the right to cross-examine him, and the fact that the prosecuting officer had the letters in his possession whilst so doing did not affect that right. If the defendant wanted the letters for the purpose of his defense, it was his privilege to call for them in the proper way and at the proper time, but the State was under no obligation, voluntarily and at that stage of the case, to furnish him means wherewith to defeat the cross-examination to which it was entitled.

The defendant, through his counsel, objected and excepted to the following in the judge's charge, to-wit:

" Section 800 of the Revised Statutes, as amended by Act No. 93 of 1898, reads as follows: 'If any married person shall marry, the former husband or wife being alive, the one so offending shall, on conviction, be imprisoned at hard labor in the State penitentiary for a period of not more than five years and not less than one year. The provisions of this statute shall not extend to any person whose husband or wife shall absent himself or herself from the other for the space of five years, the one not knowing the other to be living within that time, nor to any person who shall be, at the time of such marriage, divorced by competent authority, nor to any person whose former marriage, by sentence of competent authority, shall be declared void," on the ground that it did not correctly define the crime of bigamy, as denounced by the law of this State. This objection, as we understand it, is based upon the proposition that the second paragraph of Section 800, R. S., has been repealed by Act No. 93 of 1898. The first paragraph of the section mentioned, as found in the Revised Statutes, reads: " If any married person shall marry, the former husband or wife being alive, the one so offending shall, on conviction, pay a fine not exceeding five hundred dollars and be imprisoned not exceeding two years." The second paragraph is as given by the judge to the

jury. Act 93 of 1898 reads: "Sec. 1. That any person who shall be convicted of the crime of bigamy in this State shall be imprisoned at hard labor in the State penitentiary for a period of not more than five years nor less than one year. Sec. 2. That all laws or parts of laws in conflict with this act be and the same are hereby repealed." It will be seen, therefore, that the judge *a quo,* in charging the jury, merely incorporated in the pre-existing law the penalty imposed by the Act of 1898 as a substitute for the penalty imposed by that law. This, we think, is the necessary effect and the only effect properly attributable to the Act of 1898. But, if it were otherwise, and it were held that the effect of the act was to subject the persons exempted by the second paragraph of the section to the penalty imposed by the first, the result would be that the penalty imposed by the first paragraph would be applicable to the defendant, even though he had established his special defense, since it could hardly be held that he could escape liability because he honestly believed that he had been divorced, if he would have been liable notwithstanding that he had been actually divorced. "Bigamy" is, however, a statutory crime, and the crime denounced by the first paragraph of Section 800, R. S., falls within the commonly accepted definition thereof. 2nd Wharton's Cr. Law (10th Ed.), §1682. The Act of 1898 imposes a penalty for "bigamy," and repeals all laws in conflict with its provisions; hence, it operates the repeal of the penalty for that crime as provided in the first paragraph of Section 800, R. S. But the second paragraph of that section purports to exempt certain classes of persons from the penalty denounced by the first, and the fact that one penalty is substituted for the other does not affect such exemption. In fact, of the three classes mentioned, two—that is to say, persons—who at the time of their second marriages have been divorced, or those whose first marriages have been decreed void, would not incur the penalty denounced by the first paragraph, even if they had not been specially exempted, for the reason that they are not included within the terms of the first paragraph; and with regard to the other class, *i. e.,* persons whose husbands or wives have been absent, etc., the defendant has no concern. He would, therefore, have no reason to complain if the charge had been erroneous, but there was no errror.

The defendant excepted to the charge: " The criminal intent of the accused is presumed to exist whenever a statute has made it criminal to do any act under particular circumstances and the party voluntarily

does the act; he is thereby chargeable with the criminal intent by the doing of the act," on the ground " that it was misleading and confusing and not a correct exposition of the doctrine of criminal intent, as applied to the crime of bigamy." There is no error in this charge. Com. vs. Mash, 7 Met. (Mass.), 472; Am. & Eng. Ency. of Law (2nd Ed.), Vol. 4, p. 40, note.

Exception was taken to the refusal of the judge to charge that "the essence of the crime charged in the information is a wrongful intent, and the existence of a reasonable doubt as to whether the evidence establishes a wrongful intent entitles an accused so charged to an acquittal," and to his refusal to charge: "If the jury believe from the evidence that the accused believed, whether correctly or not, that he was legally divorced from his wife, Fannie J. Pierce, at the time that he married Emma J. Sampson, then the crime of bigamy has not been committed by him, and they must acquit the accused"; and to his refusal to charge:

"If, from all the evidence in the case, you, the jury, are convinced beyond all reasonable doubt that the defendant, Charles G. Cain, whilst married to one Fannie J. Pierce, and during the life of said Fannie J. Pierce, as is charged in the information, did on the 14th day of November, 1900, in this parish, marry one Emma J. Sampson, yet, from all the evidence you entertain a reasonable doubt as to whether the defendant, at the time he did so marry said Emma J. Sampson, believed he was legally divorced from the said Fannie J. Pierce, then I charge you it is your duty to give the defendant the benefit of such reasonable doubt and to find him not guilty of the crime charged"; and to his refusal to charge:

"Before you can convict the defendant of the crime charged in the information, you must believe, from all the evidence, beyond a reasonable doubt, that the defendant (when) he married Emma J. Sampson, as is charged in the information, did so marry her knowing he was at the time married to Fannie J. Pierce and that the bonds of matrimony had not been dissolved between him and the said Fannie J. Pierce, and a reasonable doubt as to the existence of this fact would entitle the defendant to an acquittal."

The reasons of the judge for refusing these charges are stated in a bill reserved to his refusal to give the charge first above mentioned. and are thereafter referred to in support of his action in regard to the others.

He says: "The charge was not refused, but was not read to the jury, because it had already been given, in substance * * * in the court's general charge. For instance, the court charged the jury as follows: 'If you entertain any reasonable doubt as to any fact or element necessary to constitute the prisoner's guilt, it is your sworn duty to give him the benefit of that doubt and return a verdict of acquittal.' Again: 'If, after giving a fair and impartial consideration to the facts of the case, you find the evidence unsatisfactory upon any one single point necessary to constitute the prisoner's guilt, this would give rise to such a reasonable doubt as would justify you in rendering a verdict of not guilty.' Again: 'The *onus* is, therefore, upon the State to establish, to your satisfaction, and beyond any reasonable doubt, the guilt of the prisoner.' Again: 'There must be established, and beyond any reasonable doubt, an evil and criminal intent in the prisoner when he married the second time; and, if it were established by the evidence that he had contracted the second marriage in good faith, having reason to believe that he had the right to do so, then, the intent to commit a wrong not existing, he could not be held responsible. For instance, if the accused honestly believed that his first wife was dead, or that he had been divorced from her, or that the marriage had been annulled by competent authority.' This, I claim, covered the charge requested."

The charge as thus given includes all, and rather more than all, that the defendant was entitled to.

In Com. vs. Mash, 7 Met. (Mass.) 472, where the defense, in a prosecution for bigamy, was that the defendant believed his former wife to be dead, because of her absence, though the limit of time prescribed by law to authorize the presumption of death had not been reached, Chief Justice Shaw, among other things, said:

"If the statute has made it criminal to do any act under particular circumstances, the party voluntarily doing that act is chargeable with the criminal intent of doing it. On this subject, the law has deemed it so important to prohibit the crime of polygamy and found it so difficult to prescribe what shall be sufficient evidence of death of an absent person to warrant a belief of the fact, and as the same vague evidence might create a belief in one mind and not in another, the law has also deemed it wise to fix a definite period of seven years continued absence, without knowledge of the contrary, to warrant a belief that the absent person is actually dead. One, therefore, who marries

within that time, if the other party be actually living, whether the fact is believed or not, is chargeable with that criminal intent by purposely doing that which the law expressly prohibits."

The learned judge *a quo* correctly charged the jury in the language of the first sentence of the foregoing excerpt. We have it, therefore, that, by marrying whilst he had a living wife, the defendant was chargeable with the evil intent necessary to his conviction of the crime of bigamy. But the defendant says: "True, I voluntarily did a particular act, under circumstances which constitute it bigamy in the eye of the law, including the evil intent and all other necessary ingredients, but I am, nevertheless, not guilty of that crime, because, when I went through the form of marriage with Emma Sampson, I believed that my wife, Fannie Pierce, had been divorced." The question, then, is whether, in order to acquit himself of the charge, of which otherwise he stands convicted, he must show that he believed that Fanny J. Pierce had obtained a divorce, or whether it is only necessary for him to excite a reasonable doubt as to that belief in the minds of the jury. In State vs. Barrow, 31 Ann. 693, this court, considering the *provisos* contained in the second paragraph of Sec. 800, R. S., quoted from Lord Mansfield to the effect that, what comes by way of a *proviso* in a statute must be insisted on by way of defense by the party accused; though, where the exceptions are in the enacting part of the law, it must appear in the charge that the defendant does not fall within them, and said: " It must, therefore, be insisted on, by way of defense, that the party accused comes within one of the *provisos* of this statute, *and he must prove*' (italics by the present writer) 'that his wife had absented herself from him for five years, he not knowing that she was alive within that time, or that they had been divorced by competent authority." But, in order to *prove* a fact, something more must be done than to create a doubt, however reasonable, as to its existence. Hence, we think the judge *a quo* would have been justified in charging that, if the jury found that the defendant, being already married to one woman, had married another, he was chargeable with the intent necessary to constitute the crime of bigamy, and if he claimed to have contracted the second marriage in the honest belief that the first had been dissolved by a decree of divorce, the *onus* was upon him to establish, to their satisfaction (his mental capacity and surroundings considered), that he had reasonable grounds for such belief, and did, in fact, so believe; but that it would not be enough for him merely to create

a doubt in their minds and upon that subject. The charge as given was more favorable to the defendant, and he has no just cause of complaint. The motion for new trial contains nothing which has not been considered.

Judgment affirmed.