dered for the purpose of securing from the jury, if possible, a recommendation for a suspended sentence under Act 74 of 1914, p. 191.

But even for that purpose it was properly excluded. The statute says nothing of submitting to the jury any proof of *good conduct*, other than that the accused has not previously been convicted of some offense. The evidence of "general reputation," under sections 2 and 7, of course, refers to the opinion which the community held of him *before* the commission of the alleged offense, not afterwards, for any opinion which the community may hold of him *since* the alleged commission of the offense would necessarily be dependent upon the general belief in his guilt or innocence of the particular offense charged.

[2] But the *good conduct* of an accused both before and since the alleged offense are matters of which *the judge* may inform himself, even outside the record, and of which he may take cognizance, as of any other circumstance, in fixing sentence. State v. Barret, 151 La. 52, 91 South. 543.

### Bill of Exception No. 2.

The defendant having pleaded *not guilty*, the state put in evidence proof of his having fled. The defendant then tendered evidence to explain his flight, which evidence the trial judge excluded.

[3] We think this was error to the prejudice of the defendant. The flight having been proved, defendant had the undoubted right to explain the reason of it, and it is immaterial that in this case he seems to have been contending rather for a suspended sentence than for an acquittal. In either case an unexplained flight must have prejudiced him before the jury far more than had he been permitted to show (if he could) that there were other reasons therefor than a mere wish to escape the consequences of his alleged offense.

### Decree.

The verdict and sentence herein are therefore set aside, and the case is now remanded for a new trial according to law.

---

**(99 South. 621)**

### No. 25662.

## STATE v. YOKUM.

(Feb. 26, 1923. On Rehearing, June 30, 1923. On Second Rehearing, March 8, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Criminal law ⬡202(3)—Acquittal of manufacturing and selling liquor not a bar to prosecution for possession.**

In a prosecution for possessing intoxicating liquor, it was not error to overrule a plea of autrefois acquit based on a former trial and acquittal for manufacturing and selling the same liquor.

**2. Intoxicating liquors ⬡216—Information for possessing homemade corn whisky good without statutory definition.**

No statutory definition of intoxicating liquors is necessary to sustain an information for possessing intoxicating liquors where it appears that the liquor was homemade corn whisky.

**3. Judges ⬡47(2)—Presiding at trial for manufacturing and selling intoxicating liquor no ground for recusing judge in trial for possessing the same.**

In a prosecution for possessing intoxicating liquors, where it appeared that defendant had previously been charged with manufacturing and selling the same liquor before the same judge, it was not error for the trial judge to refuse to recuse himself under Code Prac. art. 338, § 5, as amended by Act No. 203 of 1918, on the ground of having performed a judicial act in the cause in any other court.

**4. Intoxicating liquors ⬡224—Burden on defendant in prosecution for possessing liquor to show that he was within exception.**

In a prosecution for possessing intoxicating liquors, the burden was on defendant to prove that he was within the exception of the statute, and was lawfully in possession of such liquors for the use of himself and his family, and it was not the duty of the state to prove as a part of

its case that the defendant was not within such exception.

**5. Criminal law ⬉968(8) — Sufficiency of proof cannot be considered on motion in arrest of judgment.**

The sufficiency of the proof cannot be considered under a motion in arrest of judgment in a criminal prosecution.

On First Rehearing.

**6. Criminal law ⬉173—When "jeopardy" attaches in case tried without jury stated.**

Under Const. 1921, art. 1, § 9, relating to double jeopardy, "jeopardy" attaches when the case is tried by the court without a jury the moment it is called for trial, and the trial has begun by the reading of the indictment to the court, or, when that instrument is not formally read, when the first witness is sworn.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Jeopardy (In Criminal Law).]

On Second Rehearing.

**7. Criminal law ⬉162—Statute permitting discharge of accused before verdict held to violate constitutional guaranty against double jeopardy.**

Rev. St. § 1055, providing that, if in a criminal prosecution it appears that the facts in evidence amount in law to some other offense, defendant shall not by reason thereof be entitled to an acquittal of the offense charged, and that no person tried for such offense shall be liable to be afterwards prosecuted for such other offense on the same facts unless the court shall think fit in its discretion to discharge the jury from giving any verdict on such trial, and to direct such person to be indicted for the offense shown to have been committed, is in conflict with Const. 1921, art. 1, § 9, relating to double jeopardy, in empowering the trial judge in his discretion to deny defendant the right to an acquittal of the crime charged. (Per Land, Dawkins, Overton, and Rogers, JJ.)

**8. Criminal law ⬉161—"Jeopardy" defined.**

"Jeopardy" is used in the state Constitution to designate the danger of conviction and punishment which a defendant in a criminal prosecution incurs when a valid indictment has been found or a valid information or complaint presented, and a petit jury has been impaneled and sworn to try the case and to give a verdict in a court of competent jurisdiction.

**9. Criminal law ⬉172 — Statute prohibiting prosecution for offense proved on former trial applicable only to jury trials.**

Rev. St. 1870, § 1055, providing that, if the evidence shows another offense than that charged, defendant shall not be afterwards prosecuted therefor unless the court discharges the jury before verdict, is not applicable except to trials before a jury. (Per St. Paul, J.)

**10. Criminal law ⬉172—Constitution guarantees only against double jeopardy, but not right to a verdict.**

The Constitution does not guarantee to an accused the right to a "verdict," whether of acquittal or otherwise, but only that he shall not be "put in jeopardy again" for the same offense. (Per St. Paul, J.)

O'Niell, C. J., and Brunot and Leche, JJ., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Thos. F. Porter, Jr., Judge.

Mat Yokum was convicted of possessing intoxicating liquor, and he appeals. Affirmed.

Thos. Arthur Edwards, of Lake Charles, for appellant.

A. V. Coco, Atty. Gen., Griffin T. Hawkins, Dist. Atty., of Lake Charles, and Mark C. Pickrel, Asst. Dist. Atty., of Oakdale (T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

DAWKINS, J. Defendant appeals from a conviction and sentence for possessing intoxicating liquors, relying upon six bills of exception for reversal of the judgment below.

· Bill No. 1.

[1] The first bill was reserved to the overruling of a plea of autrefois acquit, based upon a former trial and acquittal for manufacturing and selling the same liquor. It appears that there was found in defendant's bathroom some 15 gallons of homemade corn whisky, and he was indicted and tried for manufacturing, selling, and disposing of the

said intoxicant; but upon trial, it was found that the liquor was in the possession of defendant before 'the Hood Bill (Act 39, 1921) went into effect, and, no proof being made of any sale, he was acquitted of the charges so made.

However, the district attorney thereafter filed a bill of information for unlawful possession of said liquor for beverage purposes, and it was upon this charge that the conviction involved in this appeal was had.

While it is true, as a physical fact, that one cannot manufacture or sell intoxicants without possessing the same, either in person or through an agent, still, a charge of violating the law in those two respects in no way involves the offense of unlawful possession; in neither case could the accused be convicted of such illegal possession, for the reason that it is not an ingredient of either. All three might be charged in separate counts of the same bill, and conviction or acquittal had upon one or all, without regard to the others.

The ruling was therefore correct. 2 Wharton's Crim. Law (11th Ed.) p. 1991 et seq., and authorities in footnotes.

### Bill No. 2.

[2] Bill No. 2 assails the ruling of the lower court in denying a motion to quash the information. Among the grounds relied upon is that of the unconstitutionality of Act 39, 1921, and while a multitude of reasons why the law was unconstitutional were alleged the only one discussed in brief or argument is that the said act adopts a foreign system or code of laws by reference, meaning, of course, the adoption by reference to federal legislation the definition of certain kinds of intoxicants. Hence we will not consider the other points except to say that they appear to be without merit. The liquor in this case was homemade corn whisky, and, as said in State v. Coco, 152 La. 241, 92 South. 883, and several later cases, no definition is required, either by the statute or in practical experience to determine that corn whisky is intoxicating.

None of the other grounds of the motion made in the alternative have been mentioned by appellant, and, finding no merit therein, we shall not consider them in detail.

The ruling was correct.

### Bill No. 3.

[3] The third bill was retained to the refusal of the trial judge to recuse himself when that action was opposed by the counsel for the state.

The only basis of the said motion was that the judge who sat in the former cases in which defendant was acquitted stated in the trial of the present case that, if the evidence was the same, that is, as to the kind and quantity, circumstances, etc., of the liquor found in defendant's bathroom, he would convict the accused of unlawful possession.

We find nothing in these circumstances to support the motion to recuse. Defendant cites section 5 of article 338 of the Code of Practice, as amended by Act 203 of 1918, which provides, among other grounds for recusing a judge: "His having performed any judicial act in the cause in any other court." Appellant also cites State v. Lee, 46 La. Ann. 623, 15 South. 159.

The section of the article referred to clearly has no application here, for the judge had not only not performed any judicial act in any other court, but none in this particular case or charge anywhere else. The reference to the 46 La. Ann. 623, 15 South. 159, must have been an error, for there was no question of recusation raised in that case. State v. Lee.

We find no error.

### Bill No. 4.

[4] The fourth bill presents for our review the ruling refusing certain special charges

which defendant requested the trial court to give or hold as follows:

"(1) The court will charge itself that the state must prove its case beyond a reasonable doubt, and, in view of the fact that the two deputy sheriffs (the only witnesses in the case) who took the stand testified that the dwelling of defendant was entered and about 15 gallons of whisky was found in the bathroom of his dwelling, not concealed, in unbroken crates, one large bottle of alcohol, not crated, and no evidence having been adduced to show when the liquors had been acquired, whether before or after the enactment of the present law. No evidence of the manufacture thereof, no evidence of any sale, no evidence of unlawful transportation thereof, or other circumstance to show unlawful possession, the act not defining the term 'lawful possession,' nor fixing any specific quantity, and it not being averred in the information that possession of said liquors was not exclusive of any of the exceptions provided for in said Act. No. 39 of the Legislature of 1921, and no proof having been offered by the state to show that the defendant's possession of said liquors did not come within the exceptions, the defendant under such statement of facts and circumstances is entitled to an acquittal.

"(2) The court is further requested to charge itself that the defendant is not required to prove his innocence, but the state must prove his guilt beyond a reasonable doubt, and, in the absence of any proof by the state of any act or deed on the part of defendant to show unlawful possession, the law specially providing that he may have intoxicating liquors in his dwelling for personal use, etc., and with no limit as to quantity, the burden of proof of unlawful possession rests upon the state, and defendant is entitled to be acquitted.

"(3) The court is requested to charge itself that an accused has the legal right to have and possess in his dwelling intoxicating liquors, and the law having failed to express any rule of what shall constitute a prima facie case, or to fix a maximum quantity, and there being no proof whatever of an unlawful possession or unlawful use of said liquors, defendant must be found not guilty."

The judge gives as his reason for the ruling the following:

"In this case the court found that on or about the time alleged in the bill of information, in the parish of Calcasieu, the defendant had in his dwelling house two 5-gallon glass water bottle containers full of homemade or moon-shine whisky, in a homemade crate unpacked, and one 5-gallon glass water bottle container about 'one-third 'or one-half full of homemade or moonshine whisky, a one-gallon glass jug or bottle partly full of a liquid containing a high percentage of alcohol, being what is commonly called 'white mule,' and another . gallon bottle partly full of homemade or moonshine whisky, which was about the same color as ordinary, commercial whisky, and which was the color of the whisky contained in the 5-gallon glass bottle containers.

"The defendant did not take the stand himself and offered no evidence whatever.

"The court refused all three of the special charges requested by the defendant, for the reason that they did not correctly state the law. The law as applied by the court in this case is as follows:

"'An accused is presumed innocent until his guilt is established by the state to the satisfaction of the court and beyond a reasonable doubt, but where the state established (as it did in this case) beyond a reasonable doubt that the defendant possessed in his dwelling house intoxicating liquors for beverage purposes, and where the accused relied, as a matter of defense, on an exception in the statute, which is not in the enacting clause by which the offense is described and forbidden, he had the burden of proving that he was within the exception, and it was not the duty of the state to prove as a part of its case that' the defendant was not within the exception. See 16 C. J. 531; 1 Wharton's Crim. Law (10th Ed.) p. 348; Underhill on Crim. Evidence, p. 43; State v. Cain, 106 La. 708, 714, 31 South. 300; State v. Barrow, 31 La. Ann. 693.

"The law makes it an offense to possess intoxicating liquor even in a dwelling house for beverage purposes, and while the same statute permits a man to keep intoxicating liquor in a dwelling house for beverage purposes for his own use, and for all his family and guests, if he wishes to urge that defense he must establish it affirmatively, and the state is under no obligation to show that the liquors in his house were not lawfully acquired and were not for the use of himself and his family."

The ruling was correct.

### Bill No. 5.

Bill No. 5 was reserved to the overruling of a motion for a new trial, which was based both upon the allegation that the judgment was contrary to the law and the evidence,

and upon the matters covered by the several bills of exception heretofore considered.

We find no error in the ruling.

## Bill No. 6.

The last bill was to the overruling of a motion in arrest of judgment, in which it was alleged:

That no crime had been charged under the laws and Constitution; that the bill did not allege that the possession of the liquor in his dwelling was exclusive of any exceptions provided by said Act 39 of 1921; that no proof was adduced to warrant a conviction; that he was deprived of his liberty and property without due process of law; and places him in jeopardy twice for the same offense.

[5] Of course, the sufficiency of the proof cannot be considered under a motion in arrest of judgment; and all the other matters raised are covered by the preceding bills and rulings thereon.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., concurs in the result.

## On Rehearing.

OVERTON, J. A rehearing was granted in this case chiefly for the reason that we were doubtful as to the correctness of our ruling in respect to bill No. 1, which is a bill to the overruling by the district court of a plea of autrefois acquit. In our original opinion, in stating the facts forming the basis of this bill, we erred in some respects, and therefore think it best to restate them.

The defendant was charged in one bill of information with the offense of unlawfully manufacturing intoxicating liquor for beverage purposes. In another bill he was charged with the unlawful possession of intoxicating liquor for the same purposes. The time of the alleged commission of the two offenses was the same. The liquor, forming the basis of each charge, was the same, and consist-ed of homemade whisky, found in the bathroom of defendant's residence.

Defendant was first tried on the charge of manufacturing the liquor. As the evidence adduced on the trial failed to show that he manufactured it, he was acquitted on that charge. He was then tried on the charge of unlawfully possessing the liquor. Before trial, however, on the latter charge, he filed, among other pleas, one of autrefois acquit, which was overruled.

Defendant cites, in support of his plea of autrefois acquit, section 9 of article 1 of the Constitution of 1921, and section 1055 of the Revised Statutes of 1870. The constitutional article cited, after guaranteeing certain rights to those accused of crime, reads:

"Nor shall any person be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained."

Section 1055 of the Revised Statutes of 1870, also cited and relied upon by defendant, reads:

"If, upon the trial of any person for any crime or misdemeanor, it shall appear that the facts given in evidence amount in law to some other offense, he shall not by reason thereof be entitled to be acquitted of the offense charged; and no person tried for such crime or misdemeanor shall be liable to be afterwards prosecuted for such other offense on the same facts, unless the court before which such trial may be had shall think fit in its discretion to discharge the jury from giving any verdict upon such trial, and to direct such person to be indicted for the offense shown to have been committed; in which case such person may be dealt with in all respects as if he had not been put upon his trial."

In order for a plea of autrefois acquit or convict to prevail under section 9 of article 1 of the Constitution of 1921, the offense, that is, the criminal act of which the accused has been acquitted or convicted, must be the same as the one for which he is being again prosecuted. However,

this does not mean that the offense must be the same eo nomine. It is enough if the evidence required to legally secure a conviction on the charge preferred in the first indictment will be sufficient to convict on the charge preferred in the second, or if the offense charged in the first includes the one charged in the second, or if the one charged in the second includes the one charged in the first. This was so held under preceding Constitutions, containing provisions similar in all respects to the provisions contained in section 9 of article 1 of the Constitution of 1921, quoted above. State v. Vines et al., 34 La. Ann. 1079; State v. Williams, 45 La. Ann. 936, 12 South. 932; State v. Terry, 128 La. 680, 55 South. 15; Marr's Criminal Jurisprudence (2d Ed.) § 488, p. 744 et seq. Since the provisions relative to former jeopardy contained in preceding Constitutions have been incorporated word for word in the present Constitution, the decisions cited above, rendered under the preceding Constitutions, are entitled to great might in interpreting the present organic law of the state.

Applying the above interpretation given to section 9 of article 1 of the Constitution of 1921 to the facts in this case, we have no hesitancy in holding that the plea of autrefois acquit, relied upon by defendant, is not well founded. The criminal acts of manufacturing the intoxicating liquor for beverage purposes and of possessing it for those purposes are not one and the same. The manufacturing of the liquor necessarily precedes its possession, for it cannot be possessed until it is brought into existence, that is, manufactured. The ingredients of the two offenses are different. The evidence necessary to legally secure a conviction for one of them is not necessary to secure a conviction for the other. The mere fact that the possession of the liquor may be expected to follow, and does follow, its manufacture, unless there should be a change of intention, does not make the two acts the same. Moreover, it cannot be said that one of the offenses is included in the other. Under an indictment charging one of them a verdict of guilty of the other cannot be returned, and hence it cannot be said that, on a trial for one of the offenses, the accused was convicted or acquitted, as the case may be, of the other also. From no viewpoint, therefore, is the plea of autrefois acquit well founded under the cited article of the Constitution.

The defendant, however, relies chiefly on section 1055 of the Revised Statutes of 1870, quoted above, which was incorporated in those statutes from Act 123 of 1855. It will be observed from the quoted section that, if, upon the trial of one accused of a crime or misdemeanor, it shall appear that the facts given in evidence amount to some other crime, this will not entitle the accused to be acquitted of the offense charged, provided that the judge in the exercise of his discretion discharges the jury from giving a verdict in the case, and further directs that the accused be indicted for the offense shown to have been committed, and, if the judge does so, that the accused may be dealt with in all respects as if he had not been put on trial, but that, if the judge does not withdraw the case from the jury, the accused cannot be tried for the other offense on the same facts.

It will be observed that this statute is different from the constitutional guaranty against being twice put in jeopardy, for that guaranty is only with respect to the same offense, whereas the statute guarantees that the accused shall not be tried on the same facts for another offense shown to exist by the evidence except under the conditions named. It will be observed, also, that, in order to try the accused for the offense which the evidence shows to have been committed, the judge must discharge the jury from giving a verdict, and must direct that the accused be indicted for the offense of

which the evidence shows him to be guilty. Therefore the discharge of the jury without a verdict is of the very heart of the statute; and hence, granting that the statute was constitutional when enacted, nevertheless, unless the judge still has power to withdraw the case after the trial has begun, and before verdict, over the protest of the accused, upon the mere ground that the evidence shows that the accused is guilty of some other offense, and not of the one charged, then the judge is without power to put into operation the very heart of the statute, and therefore the statute would no longer exist. As to whether the judge has power to thus withdraw the case so as to avoid an acquittal, as contemplated by the statute, depends, we think, upon whether jeopardy has attached, under the constitutional guaranty against being twice put in jeopardy for the same offense. If it has attached under the guaranty, we do not think that the judge has the power to withdraw the case, over the protest of the accused, without a verdict, on the ground stated; a power which he must have in order to carry out the provisions of the statute. If there is a conflict between the statute and the Constitution in so far as the former provides that the judge may discharge the jury without a verdict, after evidence has been adduced, merely because the evidence shows that the accused is guilty of some other offense than the one charged, then the statute must yield to the Constitution.

In our view, when the trial is by jury, jeopardy attaches, under the constitutional guaranty cited, the moment the jury is impaneled and sworn. This was so held in State v. Robinson, 46 La. Ann. 769, 15 South. 146. In that case it was said, quoting from Bishop on Criminal Law:

" 'When on the completing and swearing of the panel, the jeopardy of the accused begins; and it begins only when the panel is full; until full, the jeopardy is not perfect. In other words, without a jury set apart and sworn for the particular case, the individual defendant has not been conducted to his period of jeopardy. But when, according to the better opinion, the jury, being full, is sworn and added to the other branch of the court, and all of the preliminary things of record are ready for the trial, the prisoner has reached the period from the repetition of which our constitutional rule protects him.' 1 Bishop's Crim. Law, §§ 1014, 1015."

In the same decision the court said, quoting from the American and English Encyclopædia of Law, that:

" 'The jury is said to be charged with the prisoner when the twelve jurors are duly impaneled and sworn; and when the jury are thus sworn to try the accused on the charge preferred, jeopardy attaches. If it attaches for a moment only, it is sufficient to put the accused within the provision of the Constitution.' Volume II, p. 933, Jeopardy, § 4, pars. 4, 5."

The court, in the case then under consideration, after citing the above authorities and others, said:

"On the foregoing authorities we consider it a settled principle that after a jury has been set apart and sworn for the particular case the defendant has been conducted to his period of jeopardy, and is entitled to the protection of the constitutional bar, in case the jury be set aside against his objection."

The court then points out that the foregoing principles are not applicable to all cases without exception, as, for instance, they are not applicable—

"When there is any illegality in the composition of the jury; or a disqualified person is found on the panel; or the jury are known to have been guilty of misconduct; for any of which causes the verdict might be set aside."

Corpus Juris announces the same general rule as to when jeopardy attaches, as follows:

"The general rule established by the preponderance of judicial opinion and by the best-considered cases is that, when a person has been placed on trial on a valid indictment or information before a court of competent jurisdiction, has been arraigned, and has pleaded, and

a jury have been impaneled and sworn, he is in jeopardy, but that, until these things have been done, jeopardy does not attach. But in some jurisdictions it has been held that jeopardy does not attach until a valid verdict, either of acquittal or conviction, has been rendered."

[6] In the case at bar, the accused was not tried before a jury for manufacturing intoxicating liquor for beverage purposes. He could not have been constitutionally tried in that manner. However, the general principle is the same, whether the case is tried by the court with or without a jury. We therefore feel safe in holding, that jeopardy attaches under section 9 of article 1 of the Constitution of 1921, when the case is tried by the court without a jury, the moment it is called for trial, and the trial has begun by the reading of the indictment to the court, or, when that instrument is not formally read to the court, when the first witness is sworn. This assumes, of course, that the court has jurisdiction; that the indictment or information is valid; and that the accused has been arraigned. After the trial has thus begun, the constitutional guaranty against putting a person twice in jeopardy for the same offense will not permit the court, if sitting with a jury, or if sitting without a jury, to withdraw the case from trial, over the protest of the accused, so as to avoid a verdict, merely because the evidence offered shows that the accused is guilty of some other crime instead of the one charged. The Constitution contemplates that, after jeopardy has attached, the trial must proceed to a verdict, unless the jury cannot agree, if there be a jury, or unless, whether the case is being tried before a jury or by the court without a jury, a clear necessity exists for ending the trial without a verdict; and in our view the fact that the evidence shows that the accused is guilty of some other crime instead of the one charged is not such a necessity.

For the foregoing reasons, we conclude that the act of 1855, now section 1055 of the Revised Statutes of 1870, assuming that it was constitutional when enacted, is inconsistent with section 9 of article 1 of the Constitution of 1921, in that it confers power on the trial judge, in the exercise of his discretion, when the evidence shows that the accused is guilty of some other crime than the one charged, to deny him the right to an acquittal on the crime charged, by not rendering or permitting a verdict to be rendered in respect to it, but instead authorizes the judge to withdraw the case from trial with the end in view of placing the accused in position to be dealt with the same as if he had never been put on trial, when section 9 of article 1 of the Constitution of 1921 contemplates that the accused, under such circumstances, is entitled to have the trial proceeded with and to have a verdict rendered, and contemplates, moreover, that, if the judge withdraws the case from trial, on such a ground, and thereby defeats the rendering of a verdict, the accused cannot, over his objection, be tried again for the same offense. In other words, such a withdrawal of the case from trial by the judge would be equivalent, under the Constitution, to an acquittal. Therefore, as a trial judge cannot properly withdraw a case from trial, on the ground mentioned, so as to defeat the rendering of a verdict, there is a material conflict between the statute and section 9 of article 1 of the Constitution of 1921. As such conflict exists, it cannot be said that, if section 1055 of the Revised Statutes of 1870 was in force at the time of the adoption of the Constitution of 1921 that it remains in force, for, under the schedule of that Constitution, laws inconsistent with that instrument are not retained and kept in force, except in those instances in which the provision in the Constitution, giving rise to the conflict, requires legislation to put the provision in operation, in which event the law inconsistent with the

provision is retained until the required legislation is had. The constitutional guaranty, however, against being put twice in jeopardy, contained in section 9 of article 1 of the Constitution, does not come within that exception, for it is self acting, and, requires no legislation to put it into operation. As a matter of fact, as the statute was inconsistent with substantially similar guarantees, contained in preceding Constitutions, adopted since the original enactment of the statute in 1855, it was not even in force when the Constitution of 1921 was adopted, for being in conflict with those Constitutions it was not retained as a law of the state. See articles 105 and 149 of the Constitution of 1864; articles 7 and 149 of the Constitution of 1868; articles 5 and 258 of the Constitution of 1879; articles 9 and 325 of the Constitution of 1898; articles 9 and 326 of the Constitution of 1913.

Defendant cites the cases of State v. Hill, 122 La. 711, 48 South. 160, and State v. Fields, 117 La. 929, 42 South. 428, to show that this court has applied section 1055 of the Revised Statutes in cases similar to the present, and has treated the section as being in force.

In the Hill Case the defendant was first put on trial, under section 792 of the Revised Statutes for willfully shooting at one Ed. Reynolds. During the course of the trial, after the closing of the argument, the district attorney, with leave of the court, entered a nolle prosequi in the case, and the judge discharged the jury. On the same day the district attorney filed a bill of information charging the defendant, under section 791 of the Revised Statutes, with shooting Reynolds with intent to murder. Defendant in the latter case filed a plea of former jeopardy. This court ruled, in passing on the plea, that the two offenses, being separate and distinct, founded upon different laws, subject to different possible penalties, and triable before different tribunals, afforded no basis for the plea of former jeopardy. Then the court said, citing section 1055 of the Revised Statutes, that:

"Assuming that the two prosecutions were based on the same evidence, the discharge of the jury from giving any verdict upon the former trial preserved the right of the state to prosecute for the offense shown to have been committed."

In the Fields Case, defendant was first tried for and acquitted of the larceny of a mule. He was then prosecuted for the embezzlement of the same mule, and filed a plea of autrefois acquit. The court ruled that the plea was good, and said:

"It is precisely the case provided for by sections 1055 and 1056, Rev. St., where it is said that a conviction for embezzlement may be had on an indictment for larceny, and vice versa, and that if, on the trial of any crime, it appears that the facts given in evidence amount in law to some other offense, the defendant shall not be prosecuted for such other offense on the same facts, unless the judge upon such trial shall discharge the jury from giving a verdict."

While, therefore, it appears that in both of the above cases section 1055 of the Revised Statutes was invoked and applied, yet in neither of them did the court consider or determine whether there was a conflict between the statute and the Constitution then in force. In fact, it was immaterial in the Hill Case whether there was such a conflict, for the reason that, if there was not, and the statute was still in force, it had been complied with by the discharge of the jury without a verdict; and in the Fields Case, as the jury could have found the defendant guilty of embezzling the mule under the indictment charging the larceny of the mule, but did not, it was immaterial in that case whether the act of 1855 or section 1055 of the Revised Statutes was in force, for defendant, in contemplation of law, had been acquitted on both charges, and could not be tried again on either against his will. Therefore there was nothing in these cases to attract the court's attention to the conflict considered in this

case. As the court did not consider or determine in either of those cases the question of conflict between the statute and the Constitution, those cases should not be considered as having the force of precedent on the question under consideration.

For the above reasons we do not find defendant's plea well founded. With respect to the remaining bills of exception, considered in our original opinion, we find no error in the views expressed by us in passing upon them.

· For the reasons assigned, it is ordered, adjudged, and decreed that our original opinion and decree be reinstated, and made the judgment of this court, reserving to defendant, however, should he desire to avail himself of it, the right to apply for a rehearing on the question as to whether section 1055 of the Revised Statutes is still in force.

ST. PAUL, J., dissents.

O'NIELL, C. J. (dissenting). The opinion which has been handed down in this case, and from which two members of the court have dissented, maintains that section 1055 of the Revised Statutes, which was originally Act 123 of 1855, is not consistent with the constitutional guaranty that a person's life or liberty shall not be put in jeopardy twice for the same offense, and is therefore not valid legislation.

This statute has been in force nearly three-quarters of a century. It has been cited several times by this court, as the law; and never has it been suggested that the law was in conflict with the constitutional guaranty against the putting of a person's life or liberty in jeopardy twice for the same offense. Even in this case the very learned and zealous district attorney, who argued the case himself, and filed two printed briefs, contending that the statute was unconstitutional on two other grounds (which were not well founded), has not contended that

the statute was unconstitutional or invalid for the reason for which he has won his case.

While this case is pending on an application for a rehearing, I beg each member of the court to analyze the statute again. Here it is, viz.:

"Sec. 1055. If, upon the trial of any person for any crime or misdemeanor, it shall appear that the facts given in evidence amount in law to some other offense, he shall not by reason thereof be entitled to be acquitted of the offense charged; and no person tried for such crime or misdemeanor shall be liable to be afterwards prosecuted for such other offense on the same facts, unless the court before which such trial may be had shall think fit in its discretion to discharge the jury from giving any verdict upon such trial, and to direct such person to be indicted for the offense shown to have been committed; in which case such person may be dealt with in all respects as if he had not been put upon his trial."

It is not disputed that, as the statute, in terms, applies as well to misdemeanors as to felonies, it is applicable as well to cases tried by the judge without a jury as to cases tried by a jury.

And it is virtually conceded, in the opinion from which I dissent, that the statute, if valid, would fit this case exactly. The defendant was tried on a bill of information accusing him of having manufactured whisky for beverage purposes, and was acquitted. The evidence showed that he had had the whisky in his possession at the time and place alleged, but there was no proof that he had made it. On the third day after the trial and acquittal, and on the evidence that was adduced at the trial, the district attorney filed another bill of information accusing the defendant of having had the same whisky in his possession for beverage purposes, at the same time and place and on the occasion mentioned in the first accusation.

To the latter bill of information, the defendant pleaded autrefois acquit; and, in a

very lengthy document, he pleaded also that, having been tried and acquitted of the one offense which the state had seen fit to accuse him of, he could not be subject to another prosecution, for another offense in name, based upon the same facts which had been proven on the trial had, and on which the other prosecution had been founded.

This latter plea, founded upon section 1055 of the Revised Statutes, is not, technically, .the same as the plea of autrefois acquit founded upon section 9 of article 1 of the Constitution, forbidding the state to subject a person's life or liberty to jeopardy twice for the same offense.

During the argument of the plea of autrefois acquit, etc., the judge announced from the bench that, if the same facts that were proven on the trial on the charge of manufacturing the whisky should be proven on a trial of the defendant on the new charge of having had whisky in his possession—if there should be no more and no less evidence than there was in the former trial—he would find the defendant guilty. The judge overruled the plea of autrefois acquit, as well as the plea founded upon section 1055 of the Revised Statutes; and, on the same evidence that had been adduced on the trial for the offense of manufacturing intoxicating liquor, the defendant was convicted of having had the same and identical liquor in his possession for beverage purposes, at the same time and place and on the occasion referred to in the first prosecution.

I respectfully submit that the author of the opinion from which I have dissented has misconstrued the language of the statute in question. He has construed it to mean—if I understand him right—that a person charged with a crime or misdemeanor may have his life or liberty put in jeopardy twice for the same offense, if the judge, even against the defendant's protest, sees fit to enter a mistrial instead of allowing a ver-

dict to be rendered, when the judge believes that the facts given in evidence amount in law to some other offense. I quote from the third page of the typewritten opinion, viz.:

"It will be observed from the quoted section [1055] that, if, upon the trial of one accused of a crime or misdemeanor, it shall appear that the facts given in evidence amount to some other crime, this will not entitle the accused to be acquitted of the offense charged, provided that the judge in the exercise of his discretion discharges the jury from giving a verdict in the case, and further directs that the accused be indicted for the offense shown to have been committed, and, if the judge does so, that the accused may be dealt with in all respects as if he had not been put on trial, but that, if the judge does not withdraw the case from the jury, the accused cannot be tried for the other offense on the same facts."

The mistake of the learned justice, I say with great respect, is in believing that the statute leaves it possible for a judge to put a person's life or liberty in jeopardy twice for the same offense. What the statute says is that a person shall not, under any condition, be tried twice for the same offense in name. That is what the Constitution vouchsafes. But the statute goes further, and says that a person shall not be tried twice for two separate or different offenses in name, based upon the same or identical facts, unless, on the first trial, the judge, in his discretion, seeing "that the facts given in evidence amount in law to some other offense," discharges the jury from giving a verdict, etc. If the judge does that, whether the defendant protests or not, he is acquitted of the offense first charged, but, on an indictment "for the offense shown to have been committed," he "may be dealt with in all respects as if he had not been put upon his trial."

Now let us, even at the risk of making the task irksome, analyze the language of the statute again. It contains two distinct statements. The first statement is that, if, on the trial of a person accused of any crime

or misdemeanor, the facts given in evidence amount in law to some other offense than the offense charged, the defendant shall not "by reason thereof."—or for that reason alone—be entitled to be acquitted of the offense charged. The reason is obvious. The facts given in evidence in any case might amount in law to some other offense than the offense charged, and yet warrant a conviction for the offense charged. Hence, the second statement in the statute is that, when the evidence shows that another offense than that charged was committed, it is left to the discretion of the judge either to stop the trial and prevent a verdict, and thereby acquit the defendant of the offense charged, or to let the trial proceed to a verdict, and thereby prevent the defendant's being tried again on the other charge, founded upon the same facts. Surely, therefore, the statute is not violative of the constitutional guaranty against a person's being tried twice for the same offense. The last clause in the statute, "in which case such person may be dealt with in all respects as if he had not been put upon his trial," means, of course, that, in case the judge shall have discharged the jury and prevented the rendering of a verdict for the offense charged, and shall have directed that the defendant "be indicted for the offense shown to have been committed," he may be dealt with, under the new indictment, as if he had not been tried at all.

On pages 4 and 5 of the typewritten copy of the opinion from which I dissent it is said that the Constitution forbids the judge to withdraw a case from the jury, or prevent a verdict from being rendered, after the defendant has been put in jeopardy, either by the reading of the indictment or, when that is waived, by the introduction of any evidence. In support of the statement, the author of the opinion quotes liberally from the case of State v. Robinson, 46 La.

Ann. 769, 15 South. 146. The ruling in that case was—and it has been the same in every case—not that the judge was forbidden to discharge the jury, over the defendant's protest, after he had been put in jeopardy, but that the effect of the judge's discharging the jury under such circumstances was to acquit the defendant of the crime charged, and forbid another prosecution for the same offense. The same effect is had now, under section 1055 of the Revised Statutes. If the judge discharges the jury, the defendant stands acquitted of the crime charged, and he shall never be prosecuted again for that crime. That is what the statute says. And that is all that the Constitution guarantees. It is true, the defendant may be tried on some other charge, growing out of the same facts, if the judge has discharged the jury and prevented a verdict from being rendered for the crime charged. But, before this statute of 1855 was enacted, the defendant in any case was subject to prosecution a second time, on another charge based upon the same facts, whether the judge did or did not discharge the jury and prevent a verdict in the first prosecution. State v. Williams, 45 La. Ann. 936, 12 South. 932; State v. Lee, 46 La. Ann. 627, 15 South. 159; State v. Bright, 105 La. 345, 29 South. 903.

It is said four times in the opinion from which I dissent, twice on the fourth page, again on the sixth page, and again on the seventh page, that the judge has not the power to withdraw a case from the jury or prevent the rendering of a verdict after the trial has commenced, and "over the protest of the accused." Of course, that does not mean that the accused can by his protest compel the judge to let the case proceed to the rendering of a verdict. It means that, if the accused protests against the discharging of the jury after his life or liberty has been put in jeopardy, the effect of the judge's discharging the jury is the same as an ac-

quittal, and the defendant shall not be tried again for the same offense. That is also true under section 1055 of the Revised Statutes. But the defendant does not have to protest to preserve his immunity from another prosecution for the same offense. Why should he protest, when the statute says that the effect of the judge's withdrawing the case from the jury, or preventing the rendering of a verdict, is the same as an acquittal of the offense charged.

The district attorney in his brief—according to my understanding—argues that this statute (section 1055, Rev. Stat.) was intended to apply only to a case in which an acquittal of the offense charged would bar a subsequent prosecution for the other offense, disclosed by the evidence introduced on the trial for the offense first charged. That cannot possibly be. Why should the judge ever withdraw a case from the jury, or prevent the rendering of a verdict, in a case where the evidence shows that the defendant committed another offense than the offense charged, if that other offense of which the defendant is guilty is an offense for which he can be convicted under the indictment for for the offense charged? The learned district attorney goes on to illustrate thus:

"To illustrate further: The statute in question was not intended to apply in a case where the defendant is indicted for the larceny of goods as belonging to A and it appears to the trial judge that the defendant was guilty of stealing the goods, but that they were the property of B, because an acquittal of the larceny of goods as belonging to A cannot be pleaded in bar of an indictment for the larceny of goods belonging to B."

The reason why an acquittal of larceny of goods alleged to belong to A is not a bar to a subsequent prosecution for larceny of goods alleged to belong to B is that, in a prosecution for larceny of goods belonging to A, the defendant cannot be convicted if the evidence shows that the goods belonged to B. If, in such case—in a prosecution for larceny of goods belonging to A—the defendant could be convicted on proof of his having stolen the goods belonging to B, the statute would not be applicable, because there would be no sense in discharging the jury, instead of letting them render a verdict, if the evidence showed that the defendant stole the goods belonging to B.

In State v. Fields, 117 La. 929, 42 South. 428, the defendant was convicted of having embezzled a mule. He had been tried and acquitted on an indictment charging that he had stolen the mule, in the same transaction referred to in the prosecution for embezzlement. He pleaded autrefois acquit in bar of the prosecution for embezzlement. The district judge overruled the plea; but this court reversed the ruling, because, under section 1056 of the Revised Statutes, the defendant might have been convicted of embezzlement under the indictment for larceny; hence the acquittal was an acquittal of both crimes; and this court said, in effect, that even if the defendant could not have been convicted of embezzlement in a prosecution for larceny, he would be protected against the subsequent prosecution for embezzlement by section 1055 of the Revised Statutes, declaring—and now I quote from the decision—viz.:

"That if, on the trial for any crime, it appears that the facts given in evidence amount in law to some other offense, the defendant shall not be prosecuted for such other offense on the same facts, unless the judge upon such trial shall discharge the jury from giving a verdict."

The opinion in the case is very brief, and, if its language is taken literally, it might be erroneously construed to mean that the judge should have discharged the jury from rendering any verdict in the prosecution under the indictment for larceny, in order to preserve the state's right to prosecute the defendant for embezzlement. Of course, that interpretation would be nonsensical, in view of the court's having recognized that,

under section 1056, Rev. Stat., the defendant might have been convicted of embezzlement in the prosecution for larceny. There would have been no sense in discharging the jury in the first trial, instead of instructing them that they might render a verdict for embezzlement, there and then. In fact, it was the duty of the judge to instruct the jury with regard to the different verdicts which they might have rendered.

In State v. Hill, 122 La. 711, 48 South. 160, the defendant was prosecuted on a bill of information charging that he had shot one Ed. Reynolds with a dangerous weapon, to wit a pistol, with intent to murder. The defendant pleaded, in bar of the prosecution, that he had already been prosecuted on a charge of having willfully assaulted the same Ed. Reynolds by willfully shooting at him at the same time and place and in the same transaction referred to in the subsequent bill of information, and that, on the former trial, after the evidence had been adduced and the argument of the case had been concluded, the district attorney, with leave of court, had entered a nolle prosequi. The district judge overruled the plea; and this court affirmed the ruling, under authority of section 1055, Rev. Stat., viz.:

"Assuming that the two prosecutions were based on the same evidence, the discharge of the jury from giving any verdict upon the former trial preserved the right of the state to prosecute for the offense shown to have been committed. Section 1055, Rev. St. 1870."

In State v. McGarrity, 140 La. 436, 73 South. 259, this court again referred to section 1055 of the Revised Statutes as valid legislation, viz.:

"Rev. St. § 1055, provides that if, upon trial of any person for any crime or misdemeanor, it shall appear that the facts given in evidence amount in law to some other crime, he shall not be entitled to be acquitted of the offense charged, and no person tried for such crime or misdemeanor shall be liable to be afterwards prosecuted for such other offense on the same facts, unless the trial court shall discharge the jury from giving any verdict and direct such person to be indicted for the offense shown to have been committed, in which case he may be dealt with in all respects as if he had not been put upon his trial. Held, that the section has application only to cases where verdict has not been set aside at accused's own instance; for only when, under Const. art. 9, can the plea of once in jeopardy avail."

I do not see how we can possibly maintain that the constitutional guaranty against a person's being tried twice for the same offense prevents the Legislature from going a step further, and saying—in accord with the spirit as well as the letter of the Constitution—that a person shall not be tried twice on the same state of facts, for offenses different in name, unless the judge, in the first trial, dicharges the jury from rendering a verdict, and thereby acquits the defendant of the offense first charged, in order that he may be prosecuted for the other offense, on the facts disclosed in the first trial.

The purpose of the statute was to protect a person against being prosecuted twice, not only for the same offense in name, but even on the same state of facts, for offenses different in name.

The court's application of the constitutional guaranty in this case, if it be allowed to stand, will operate, not to protect a person against being prosecuted twice for the same offense—because it is not contended that the statute allows that—but to take away the statutory protection against a person's being prosecuted twice on the same state of facts for offenses different in name. That would surely be an astonishing consequence; because, if Act 123 of 1855, now section 1055, Rev. St., is violative of the constitutional guaranty against a person's being tried twice for the same offense, the Legislature will never be allowed to correct it.

On Second Rehearing.

LAND, J. [7] Section 1055 of the Revised Statutes of 1870 provides that—

"If, upon the trial of any person for any crime or misdemeanor, it shall appear that the facts given in evidence amount in law to some other offense, he shall not by reason thereof be entitled to be acquitted of the offense charged; and no person tried for such crime or misdemeanor shall be liable to be afterwards prosecuted for such other offense on the same facts, unless the court before which such trial may be had, shall think fit in its discretion to discharge the jury from giving any verdict upon such trial, and to direct such person to be indicted for the offense shown to have been committed; in which case such person may be dealt with in all respects as if he had not been put upon his trial."

This section of the Revised Statutes of 1870 is a reproduction of section 9 of Act 123 of 1855, entitled "An act to regulate the mode of procedure in criminal prosecutions."

At the date of the adoption of this act, the Constitution of 1852 was in force, but neither the Constitution of that year nor the previous Constitutions of 1845 and 1812 contained any "Bill of Rights," or any prohibition against an accused person being twice put in jeopardy for the same offense.

The jeopardy clause appears for the first time in our organic law in the year 1864. Article 105 of the Constitution of that year declares that—

"He [the accused] shall not be twice put in jeopardy for the same offense."

The "Bill of Rights" makes its first appearance in the Constitution of 1868, and article 6 of said "bill" provides that—

"He [the accused] shall not be tried twice for the same offense."

Article 5 of the "Bill of Rights" of the Constitution of 1879 reads:

"Nor shall any person be twice put in jeopardy of life or liberty for the same offense, except on his own application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained."

The Constitutions of 1898, 1913, and 1921 contain the same provision in identical words.

See article 9, Bill of Rights, Constitutions 1898 and 1913, and section 9, Bill of Rights, Constitution 1921.

Article 5 of the amendments to the Constitution of the United States provides:

"Nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

This provision of the federal Constitution prohibiting a second jeopardy does not bind the states, but applies only to offenses against and trials under the laws of the United States. State v. Cheevers, 7 La. Ann. 40; 16 C. J. 233, par. 360.

While the doctrine that no one shall be twice put in jeopardy for the same offense has always been embedded in the common law of England, as well as in the Roman law, "Nemo bis punitur pro eodem delicto," it is impossible to trace the doctrine to any distinct origin, as it is a part of the universal law of reason, justice, and conscience.

The Cheevers Case was decided in 1851 by the Supreme Court of this state, and, although the Constitution of 1845, then in force, contained no jeopardy clause, the court said:

"The Constitution of the United States provides that no person shall be twice put in jeopardy of life or limb for the same offense. This is not, perhaps, applicable, as a constitutional principle, to offenses against a state; yet it is but the enunciation of a well-established common-law principle, and, as such, is expressly adopted by our statute of 1805." State v. Cheevers, 7 La. Ann. 41.

However, in incorporating this principle of common law into the organic law of this state in concrete form, the framers of the Constitutions of 1879, 1898, 1913, and 1921 have expressly declared that "no person shall be put twice in jeopardy of life or liberty for the same offense, except on his

application for a new trial, or where there is a mistrial, or a motion in arrest of judgment is sustained."

[8] "Jeopardy" is used in our state Constitutions to designate the danger of conviction and punishment which a defendant in a criminal prosecution incurs, when a valid indictment has been found, or a valid information or complaint presented, and a petit jury has been impaneled and sworn to try the case and to give a verdict in a court of competent jurisdiction.

Under the jurisprudence of this state, when jeopardy has once begun, if the jury is set aside against the objection of the accused, he may successfully plead former jeopardy to another prosecution; that is to say that after the jury has been impaneled and sworn the accused has the right to insist that the jury be permitted to return a verdict on his plea. 1 Bish. Cr. Law, §§ 1014, 1015; 1 Whart. Cr. Law. § 590; State v. Paterno, 43 La. Ann. 514, 9 South. 442; State v. Robinson, 46 La. Ann. 769, 773, 15 South. 146; State v. Duvall et al., 135 La. 710, 65 South. 904, L. R. A. 1916A, 1264.

Section 1055 of the Revised Statutes completely denies to the accused, after all of the evidence has been adduced before the jury, any right to object to their discharge by the trial judge, and any right to demand a verdict at their hands, as said section expressly declares that it is left to the trial court "in its discretion to discharge the jury from giving any verdict upon such trial," after all of the evidence is in, and after jeopardy has clearly attached.

The section of the Revised Statutes is therefore obviously in conflict with the jeopardy clauses of the Constitutions of this state from 1879 down to and including our present Constitution of 1921, as it deprives an accused of his inalienable right to demand a verdict at the hands of the jury, when jeopardy has attached, a right which the accused alone can surrender upon his own application, or waiver.

The section in question is not only an archaic excrescence upon the body of the criminal laws of this state; it is not only a clear invasion of the constitutional right of an accused to avail himself of the protection secured to him under the jeopardy clauses of our successive Constitutions for the last four decades; but it is a statutory provision against public policy, and the best interests of society, as it permits the escape of a criminal, not guilty of the crime charged against him, it is true, but proven by the evidence adduced on the trial to be guilty of another and perhaps more serious offense, merely because a trial judge should happen to nod and neglect to discharge the jury before verdict, and that too, in cases where jeopardy could not possibly attach, as to the other crime, as the accused on the former trial could not have been convicted of the crime to be charged against him on the second trial; and this is the true test. State v. Terry, 128 La. 680, 55 South. 15; State v. Williams, 45 La. Ann. 936, 12 South. 932; State v. Vines, 34 La. Ann. 1079; State v. Anderson, 135 La. 326, 65 South. 478; State v. Heard, 107 La. 60, 31 South. 384; State v. Hill, 122 La. 711, 48 South. 160; State v. Barrett, 121 La. 1058, 46 South. 1016; State v. Xenos, 138 La. 113, 70 South. 55; State v. Malone, 28 La. Ann. 80.

The very foundation of this section of the Revised Statutes is that the defendant cannot be convicted under the indictment against him of the other crime which the evidence before the jury discloses that he has committed.

This being true, and no jeopardy having attached as to the other crime, this provision of the Revised Statutes becomes useless. It subserves no good purpose whatever, but, on the contrary, affords a loophole of escape to the criminal, if the trial

judge through inadvertence should fail to withdraw the case from the jury before verdict.

Under the ægis of the organic law, an accused is entitled to a verdict after jeopardy has attached, and nothing short of this full right can possibly satisfy the constitutional prohibition against his being put twice in jeopardy for the same offense.

An accused person who stands charged with perjury, forgery, embezzlement, or other crime involving moral turpitude, is prevented by this section of the Revised Statutes from receiving a verdict at the hands of the jury, although the evidence shows that he is not guilty, merely because the trial judge may be of the opinion that the evidence indicates some other offense. If the accused afterwards should be tried for such other offense and be acquitted, yet the old charge against him is left remaining upon the criminal records as a perpetual witness to his shame and disgrace. An accused person is entitled to the full measure of the protection which the Constitution of the state has thrown around him, and this protection cannot be taken from him by a statute denying this fundamental right.

It is therefore ordered, adjudged, and decreed that our original opinion and decree be reinstated and made the judgment of the court.

O'NIELL, C. J., and BRUNOT and LECHE, JJ., dissent.

ST. PAUL, J., concurs in the decree and hands down reasons.

THOMPSON, J., concurs in the decree.

ST. PAUL, J. (concurring). [9] Upon further consideration it now appears to me that section 1055, Revised Statutes of 1870, is not applicable except to trials before a jury.

[10] Otherwise I would *dissent;* for an accused is not "entitled to an acquittal," but

only that he shall not be *put in jeopardy again* for the same offense. In trials before a jury the state should proceed as in State v. Hill, 122 La. 711, 48 South. 160, and not as in State v. Cheevers, 7 La. Ann. 40 (1852).

I therefore concur in the final decree, but not in the opinion handed down.