935 So.2d 354 (2006)
STATE of Louisiana, Appellee,
v.
Jack KING, Appellant.
No. 41,083-KA.
Court of Appeal of Louisiana, Second Circuit.
June 28, 2006.
Rehearing Denied August 4, 2006.
*357 Jack King, Pro Se Appellant.
Carey J. Ellis, III, David R. McClatchey, for Appellant.
Paul J. Carmouche, District Attorney, Dhu Thompson, Ron Christopher Stamps, Lea R. Hall, Jr., Assistant District Attorneys, for Appellee.
Before STEWART, MOORE and LOLLEY, JJ.
LOLLEY, J.
Jack King was convicted by a unanimous jury in the First Judicial District Court, Parish of Caddo, Louisiana for armed robbery using a firearm. La. R.S. 14:64 and 14:64.3 He was subsequently adjudicated a second felony habitual offender and sentenced to 203 years at hard labor, with credit for time served. King appealed. For the following reasons, King's conviction is affirmed, his sentence is amended, and as amended, affirmed.

FACTS
On May 18, 2004, King entered the customer line at a Hibernia Bank branch in Shreveport, Louisiana. When King reached the teller, he handed her a pillowcase, displayed a portion of his gun and demanded money. The teller stuffed at least $5,000 into the pillowcase, along with a dye pack. Once King received the pillowcase, he left the bank and the dye pack exploded. King ran from the bank with red dust from the dye pack covering him.
Patrick Knight, a customer at Hibernia Bank, chased King and forced him to the ground. At that time, King had the pillowcase and the gun in his possession. Knight kicked away the gun as he held King to the ground until the police arrived.
Following a trial, King was convicted by a unanimous jury of armed robbery using a firearm on May 26, 2005. The state subsequently filed a habitual offender bill of information seeking to have King declared a second felony habitual offender based on a 1983 manslaughter conviction and the subject armed robbery conviction. King filed a pro se motion to quash the habitual offender bill, which alleged in part that, during plea negotiations for his prior convictions, he was not advised that the convictions could or would be used for future enhancement purposes.
*358 At the habitual offender hearing, the trial court held that King's allegations were without merit. The trial court also denied his post-trial motions. Although King's second degree murder bill of indictment did not have fingerprints, the state introduced the bill of indictment, along with the minutes of his guilty plea to manslaughter, as Exhibit S-1. Despite King's objection to the introduction of S-1 because the certification was improper, the trial court found King to be a second felony offender.
On July 22, 2005, King was sentenced to 203 years at hard labor, with credit for time served. King subsequently filed a motion to reconsider sentence, which was denied by the trial court. This appeal by King ensued.

DISCUSSION
In King's first assignment of error, he maintains that the state did not comply with the requirements necessary to adjudicate him as a second felony offender under the habitual offender law. Specifically, King cites La. R.S. 15:529.1 and contends that more than 10 years have elapsed between his manslaughter conviction on July 5, 1983, and the commission of the present armed robbery offense on May 18, 2004. Additionally, he argues that the state failed to offer sufficient proof of the alleged manslaughter conviction. He urges that it is the state's initial burden to show that there was a conviction and that the defendant was represented by counsel, or waived counsel, at the time he entered his plea. He contends that, although the state submitted court minutes from the proceeding, the state failed to establish whether or not the prior guilty plea was informed and voluntary, and made with the articulated waiver of the three Boykin rights. Finally, King argues that the state failed to adequately establish his identity as the individual previously convicted of manslaughter as charged in the habitual offender bill of information. For the following reasons, we disagree.
Louisiana R.S. 15:529.1(D)(1) governs the procedure for preserving these issues on appeal. The procedure requires the court in which the subsequent conviction was obtained to bring the offender before the court, inform him of the allegations contained in the information and of his rights, and require the offender to say whether the allegations are true. If the offender denies the allegation, refuses to answer, or remains silent, his plea or the fact of his silence is entered on the record and he shall be given 15 days to file particular objections to the information. Any challenge to the previous conviction or adjudication of delinquency not made before sentence is imposed, may not thereafter be raised to attack the sentence. La. R.S. 15:529.1(D)(1)(b); State v. Jones, 29,805 (La.App.2d Cir.09/24/97), 700 So.2d 1034, writ denied, 1999-2487 (La.02/18/00), 754 So.2d 961.
In a habitual offender proceeding, the state is only required to establish a prior felony conviction, and that the defendant is the person convicted of the earlier offense. On appeal, the sole issue to be resolved is whether evidence was introduced upon which the trial judge could find the defendant to be the same person as the previously convicted felon. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, XXXX-XXXX (La.06/26/98), 719 So.2d 1048, citing State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990).
Prima facie proof of a prior felony conviction may be established by compliance with La. R.S. 15:529.1(F). However, this provision is not the exclusive method of proving a prior felony conviction: *359 any other competent evidence may be used to establish such proof. White, supra; State v. Young, 27,237 (La.App.2d Cir.08/23/95), 660 So.2d 548. Identification of the accused may be by testimony of witnesses, by expert opinion as to the fingerprints of the accused when compared to those in the prison record introduced, or by photographs contained in the duly authenticated record. White, supra; Young, supra; Shepherd, supra.
In State v. Shelton, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court discussed the state's burden of proof in a habitual offender proceeding as follows:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
Id. at 779-80 (footnotes omitted).

Objections/Time Delay
King argues that he was not allowed to file objections to the habitual offender bill of information and contends that although he attempted to file an objection by filing a motion to quash the habitual offender bill of information, neither he nor his trial counsel were afforded 15 days to file a written response to the bill pursuant to La. R.S. 15:529.1(D).
The record shows that King filed a pro se motion to quash the habitual offender bill, which alleged that, during plea negotiations for his prior convictions, he was not advised that the convictions could or would be used for future enhancement purposes. It also alleged that "the legislature failed to enact statutes which would have allowed the defendant to plea bargain with confidence" and that multi-bill statutes are unconstitutional because they are used to intimidate a defendant. At the habitual offender hearing, King waived formal reading of the bill of information. Because trial counsel waived delays regarding the habitual offender hearing, King's argument that he was not afforded the requisite time delay in which to file objections to the habitual offender bill is without merit.

"Cleansing Period"
King also argues that the stated failed to prove that the 10-year "cleansing period" between the 1983 conviction and the current 2004 conviction had not elapsed.[1] He further contends that there is no evidence *360 in the record that 10 years had passed between the date of discharge and the date of commission for the present offense. Finally, King maintains that the state failed to provide evidence as to when he was discharged, and that his discharge could have taken place before the theoretical date of discharge.
Louisiana R.S. 15:529.1(C) provides that:
The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses. In computing the intervals of time as provided herein, any period of servitude by a person in a penal institution, within or without the state, shall not be included in the computation of any of said ten-year periods between the expiration of the maximum sentence or sentences and the next succeeding offense or offenses. (Emphasis added.)
See also State v. Everett, supra. The penalty under subsection La. R.S. 15:529.1(A) is employed to determine the appropriate sentence if ten years or less has elapsed between the defendant's discharge from being subject to penitentiary confinement for the previous conviction and the commission of the under lying felony. Id. In a habitual offender proceeding, the state bears the burden of proving that the period of time between adjacent offenses has not expired. State v. Ignot, 29,745 (La. App.2d Cir.08/24/97), 701 So.2d 1001, writ denied, XXXX-XXXX (La.06/18/99), 745 So.2d 618.
Technically, King is correct in his assertion that the state did not provide direct evidence as to his actual date of discharge. However, the trial court did not err in making a theoretical calculation based on the evidence it was presented as to King's discharge. Here, King was convicted of manslaughter on July 5, 1983, and was sentenced to serve 21 years at hard labor with credit for time served. The record reflects that he was subject to penitentiary confinement for the previous offense until February 21, 2005. King committed the present offense of armed robbery on May 18, 2004. At trial, King testified that he was convicted of manslaughter and was still on parole for the previous offense when he committed the present armed robbery offense. He also stated his belief that his manslaughter sentence would not be completed until July 17, 2005. Notably, during the habitual offender hearing, King did not raise the issue of his date of discharge. Accordingly, the trial court did not err in concluding that a ten-year period had not elapsed between the two convictions for purposes of determining King to be a habitual offender.

Identity
King also contends that the state failed to establish his identity as the person charged of the predicate felony and that, in the proceeding, there was no witness to establish that he was the same person who in fact committed the predicate offense of manslaughter. Here, the state did not provide fingerprint evidence to establish identity. However, the fact that the state failed to provide a fingerprint expert or fingerprint evidence does not undermine the conclusion that King was the same *361 person who had been convicted of the previous felony. King's identity as the person who was convicted of the predicate felony was proven by his own admissions at the armed robbery trial and the certified bill of information and court minutes from the previous conviction. See State v. Keys, 29,369 (La.App.2d Cir.05/07/97), 694 So.2d 1107, writs denied, 97-1387, 97-1497 (La.10/31/97, 703 So.2d 21). We consider the evidence sufficient to identify King as the person convicted of the predicate offense. Therefore, this argument is without merit.

Sufficient Proof/Manslaughter Guilty Plea
King also argues that the state failed to offer sufficient proof of the alleged manslaughter conviction and that the state failed to establish that the guilty plea was informed and voluntary. During the habitual offender hearing, the state introduced into evidence a certified photocopy of the bill of indictment charging King with second degree murder, which was alleged to have occurred on May 23, 1983. The state also introduced a certified photocopy of the court minutes wherein King entered a plea of guilty to manslaughter. The state did note that, "due to some unexplainable reason, the fingerprints for this particular conviction, as far as I can tell, do not exist." The state did, however, adopt and incorporate King's admission at trial that he was convicted of manslaughter. King objected to the introduction of Exhibit S-1 alleging that the certification was improper because the dates were not placed on the seal at the same time the seals were placed on the bill and minutes; however, he did not specifically object to the lack of fingerprint exhibits. Additionally, there was no objection to the adoption of King's trial testimony on the issue.
The evidence presented by the state, including the bill of indictment and minutes from the guilty plea, was sufficient to establish that King was properly informed of his rights pursuant to Boykin v. Alabama. The state used King's testimony to show that he was the person charged, and the minutes reflected that King was represented by counsel. Specifically, the minutes of the manslaughter guilty plea stated that King was present with counsel and advised of "his constitutional rights as per Boykin v. Alabama." Once the state proved the existence of the prior guilty plea, the burden shifted to King to establish infringement on his rights or a procedural irregularity in taking the guilty plea. State v. Shelton, supra. Here, King failed to present any evidence of infringement upon his rights. Furthermore, based upon King's testimony and the evidence, the prosecution established that he was a second felony offender. Therefore, the prosecution met its burden of proof under La. R.S. 15:529.1, and we conclude that argument is also without merit.

Sentencing
King also argues that the trial court erred in imposing an excessive sentence, because he accepted responsibility for the crime and expressed remorse at trial and sentencing. King concludes that the 203-year sentence is shocking to one's sense of justice and that the goals of punishment can better be accomplished with a less severe sentence. Furthermore, in his pro se brief, King argues that the imposed sentence is illegally lenient because the trial court failed to order that the sentence be served without benefit of parole, probation or suspension of sentence. In this regard, King concludes that the sentence should be set aside and the case remanded for resentencing.
In reviewing claims of excessive sentence, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the *362 criteria set forth in La. C. Cr. P. art. 894.1. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not a rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). A trial judge shall exercise his sentencing discretion to impose sentences according to the individualized circumstances of the offense and the offender. State v. Rogers, 405 So.2d 829 (La.1981). In tailoring the sentence to the individual, the important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Bradford, 29,519 (La. App.2d Cir.04/02/97), 691 So.2d 864. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.03/01/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.02/02/01), 783 So.2d 385.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, 99-1753 (La.05/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.05/12/04), 873 So.2d 939.
Here, the record shows more than adequate compliance with the statutory considerations. Prior to imposing the sentence, the trial court discussed several factors, which were listed in the pre-sentence investigation report. The trial court noted that King was 55 years old at the time of the offense. The trial court also noted that King has been arrested at least 30 times for different offenses. King is a second felony offender, who has been convicted of manslaughter, and he has also been convicted of two federal felonies.[2] Additionally, the trial court noted that King has a history of violating probation and parole. The trial court commented that, based on his criminal record, it appeared that King had a problem functioning without committing felonies or violent crimes. The trial court also stated that any lesser sentence would deprecate the seriousness of the crime. The court took into consideration King's testimony at the sentencing hearing and that he admitted at trial to committing the armed robbery.
The sentencing range for armed robbery using a firearm is not less than 10 years and not more than 99 years, without the benefit of parole, probation or suspension of sentence. La. R.S. 14:64. Since a firearm *363 was used in the commission of the robbery, there is a mandatory addition of 5 years to be served consecutively and without benefits. La. R.S. 14:64.3. As a second felony habitual offender, the defendant faced a minimum sentence of 49½ years and a maximum sentence of 198 years without benefit of parole, probation or suspension of sentence. La. R.S. 15:529.1.
So considering, we do not find the maximum sentence for this defendant to be constitutionally excessive. However, a review of the record reveals that the total sentence of 203 years is illegal. When imposing the sentence, the trial court stated that he was ordering "the maximum sentence possible under the law which is 203 years at hard labor as a multiple offender." It is apparent that the trial court imposed a sentence of twice the maximum (99 years x 2, i.e. 198) plus the 5-year enhanced penalty pursuant to La. R.S. 14:64.3 to reach King's total sentence of 203 years. Although we do not find a maximum sentence for King to be excessive, we conclude that the total number of years calculated by the trial court, i.e. 203 years, was in error.
A sentence under the habitual offender law effectively replaces the sentence for the underlying crime under La. R.S. 14:64 and 14:64.3. State v. White, 39,634 (La. App.2d Cir.06/16/05), 907 So.2d 180, writ denied, 2005-2097 (La.03/10/06), 925 So.2d 510. Thus, the state's choice thereafter to proceed under the habitual offender law and adjudicate King as a second felony offender subjected King only to the sentence as specified under the habitual offender law. The applicable sentence under the habitual offender law effectively replaces the sentence for the underlying crime under La. R.S. 14:64 and 14:64.3. The imposition of an additional five years under La. R.S. 14:64.3 by the trial court was erroneous and resulted in an illegal sentence. Therefore, we amend the sentence to delete the additional five year term and affirm King's remaining sentence of 198 years as a second time habitual offender.
Additionally, we note that the sentence is illegally lenient. The trial court failed to order that King's sentence be served without benefits. Louisiana R.S. 15:529.1(G) provides that sentences under the provisions of the habitual offender statute be served without benefit of probation or suspension of sentence. See State v. Sweat, 40,625 (La.App.2d Cir.04/12/06), 926 So.2d 779. The trial court's failure to state that the sentence will be served without those benefits is automatically corrected by operation of La. R.S. 15:301.1. See State v. Cooper, 38,743 (La.App.2d Cir.09/22/04), 882 So.2d 657. Thus, King's 198-year sentence is to be served without the benefits of probation or suspension of sentence.

Pro Se Assignments of Error
In his pro se appellate brief, King raises two additional assignments of error. First, King argues that the trial court erred by designating a particular place of commitment, Angola, where he will serve his term of imprisonment. Specifically, the trial court sentenced King to hard labor and remanded him "to the custody of the sheriff for transfer to the Department of Corrections, Angola." King maintains that the designation of his confinement to Angola was in error, and his sentence should be vacated and remanded for re-sentencing. We disagree.
La. R.S. 15:824 reads in pertinent part, as follows:
A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed *364 to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. 15:1062.
* * * *
C. Notwithstanding any provision of law to the contrary, only individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Corrections.
As we have already discussed herein, as a second felony offender, King's penalty is a minimum sentence of 49½ years and a maximum sentence of 198 years without benefit of probation or suspension of sentence. La. R.S. 15:529.1. Therefore, the sentence is to be served at hard labor and King should be committed to the Department of Corrections. La. R.S. 15:824 C. Despite the fact that the trial court stated "Angola" at the end of the sentence, the trial court properly committed King to the custody of the Department of Corrections. Use of the designation "Angola" at the end of the sentence was obviously used for emphasis only and was not in error. This assignment is without merit.

Ineffective Assistance of Counsel
In another pro se assignment of error, King submits that his trial counsel was ineffective for failing to adequately investigate, confer or otherwise interview King in the course of his defense.[3] Specifically, King argues that his trial counsel failed to adequately confer with him prior to trial. King contends that he filed a motion to recuse his counsel which was denied by the trial judge. He also contends that trial counsel did not know whether he had decided to testify prior to trial. King concludes that his trial counsel failed in his duty to make a reasonable investigation.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Williams, 33,581 (La.App.2d Cir.06/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle to raise such a claim. Id. However, when the record is sufficient, this court may resolve the issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La. App.2d Cir.09/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The assessment of an attorney's *365 performance requires that his conduct be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to a trial counsel's judgment, tactical decisions and trial strategy. There is a strong presumption that trial counsel has exercised reasonable professional judgment. State v. Tilmon, 38,003 (La.App.2d Cir.04/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866.
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing that the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Strickland, supra; Tilmon, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.04/05/95), 653 So.2d 174, writ denied, 95-1398 (La.11/03/95), 662 So.2d 9.
A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim: general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.04/03/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.05/30/03), 845 So.2d 1067.
Here, King's claim would have best been raised in an application for post-conviction relief, but the record is sufficient to address this issue on appeal. In this particular case, this defendant has failed to show that this trial counsel committed any error or that his performance was deficient. King argues that his trial counsel failed to adequately represent him at trial. The record shows that King's trial counsel filed numerous pretrial motions, including a motion for discovery. Although King claims that his trial counsel did not know that he decided to testify prior to trial, it is clear that King was advised of his right not to testify. At trial, King's trial counsel stated, out of the presence of the jury, that he had advised King of his right not to testify and that if he chose not to testify then the court would instruct the jury not to hold that against him. King's trial counsel also stated that he told King that if he did testify then the state could question him about his prior criminal record. King confirmed to the trial court that his attorney discussed his right not to testify in detail. He also told the court that he wanted to testify and King then admitted to committing armed robbery. During the trial and prior to King's testimony, his trial counsel cross-examined witnesses, and he filed a motion for post-verdict judgment of acquittal and motion for appeal. King's trial counsel also filed a timely motion to reconsider sentence. Additionally, at the habitual offender hearing, King's attorney objected to the certification of the bill of indictment and the minutes. He also objected to the state offering the defendant's felony convictions for sentencing purposes because it was not relevant to the habitual offender determination. The record suggests that King's trial counsel was completely competent and that his actions did not prejudice King or deprive him of a fair trial in any manner whatsoever. So considering, King has totally failed to demonstrate that he was prejudiced by any perceived deficiencies in his trial counsel's performance. This assignment is therefore without merit.

*366 CONCLUSION
For the foregoing reasons, Jack King's conviction is affirmed and his sentence is amended from 203 years to 198 years, without benefit of probation or suspension of sentence.
CONVICTION AFFIRMED AND SENTENCE AMENDED; AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, MOORE, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The Louisiana Supreme Court has admonished against the use of the term "cleansing period." See State v. Everett, 2000-2998 (La.05/14/02), 816 So.2d 1272.
[2] During the habitual offender hearing, the state introduced into evidence a certified copy of the indictment, the judgment and probation commitment order relating to King's felony charges. The federal convictions were presented for sentencing purposes only.
[3] King also raises as a pro se assignment of error the issue of his illegally lenient sentence, which issue is addressed in our discussion regarding his sentence.