939 So.2d 519 (2006)
STATE of Louisiana, Appellee
v.
Shon P. SHAW, Appellant.
No. 41,233-KA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
*520 Shon P. Shaw, Pro Se.
Indigent Defender Board by Mary L. Harried, Shreveport, Louisiana Appellate Project by Edward K. Bauman, Lake Charles, for Appellant.
Paul J. Carmouche, District Attorney, Lea R. Hall, Catherine M. Estopinal, Assistant District Attorneys, for Appellee.
*521 Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
Shon Shaw was charged by bill of information with one count of attempted second degree murder and two counts each of second degree kidnapping and aggravated criminal damage to property arising from an incident in which he used his mother's car to ram his former girlfriend off the road. A jury convicted him of attempted manslaughter, and found him guilty as charged on all other counts. Adjudicated a third felony offender, Shaw was sentenced to 40 years at hard labor for attempted manslaughter, 80 years at hard labor without benefits for the second degree kidnappings, and 30 years at hard labor on the aggravated criminal damage to property charges, with all sentences to run concurrently. He now appeals: through counsel he urges insufficient evidence to convict and an illegal sentence, and by pro se brief he urges ineffective assistance of counsel and other sentencing errors. We affirm.

Factual Background
The kidnappings and car chase occurred shortly before midnight on June 26, 2004, on Red Fox Trail in west Shreveport. The incident began, however, earlier in the evening at the IHOP on Pines Road, where Karen Harris and some girlfriends were having a birthday dinner for one of the women. Karen had just called off a yearlong relationship with Shaw some two weeks earlier, but on June 26 she allowed Shaw to drive her home from her job at Church's Fried Chicken and they talked about getting back together. Karen was also good friends with Shaw's sister, Sheryl Jeter, who was present at the birthday dinner at IHOP.
Karen and Sheryl, as well as two of the other women present, Marvette Jones and Danielle Adams, testified that during the course of the evening, Shaw kept calling on his sister Sheryl's cell phone and asking to speak to Karen. Karen refused to meet with him that night, and he got mad; the other women confirmed that he sounded angry and that Karen quit taking his calls. At one point Shaw actually drove to IHOP looking for her, but she hid in the restroom until the police were called and Shaw left the parking lot.
Shaw went straight to his mother Jessica Jeter's house and told her that she needed to phone Karen on Sheryl's cell. Mrs. Jeter complied, telling Sheryl they needed to bring Karen home (to Mrs. Jeter's house). Shaw suddenly snatched the phone from his mother, screamed at Sheryl and Karen, and started hitting his mother in the head with the phone. Hearing this, Sheryl asked the women to come home with her; perhaps imprudently, they agreed. Sheryl let Shana Taylor drive her (Sheryl's) Lexus, while Karen and Marvette followed in Danielle's Nissan Altima. Shana pulled in the driveway behind Mrs. Jeter's Lincoln Town Car; Danielle parked the Altima in the street, at the end of the driveway.
When the women arrived, they saw Mrs. Jeter come out of the house to speak to Karen. However, Shaw came out and began shouting at his mother to get into the car; there were also words between Shaw and Karen, who remained in the back seat of the Altima. When Mrs. Jeter refused to get into the Town Car, he physically pushed her in and then jumped into the driver's seat. Danielle suspected he was going to back out, so she started to drive off, going down Red Fox Trail. With his mother still in the front seat, Shaw backed the Town Car around the Lexus, pulled onto Red Fox Trail and started to follow the Altima.
*522 At the wheel of the Altima, Danielle could see that Shaw was following them; Karen even called 911 on one of the women's cell phones. Suddenly they felt a bump as the Town Car rammed them from behind, knocking them off the road and into a pine tree. Detective Tom Oster, who investigated the incident, testified that the Altima was "accordioned" with the rear end pushed up to the back seat area; the women testified that the doors would not open, so they had to climb out through a broken window. Karen sustained two broken bones in her neck and a bruised thigh and calf; she testified that she could hardly stand on her own. However, she saw Shaw get out of the Town Car and start walking toward her. Because of her injuries, she was unable to run away. She testified that Shaw started "swinging on" her and struck her in the back with a tree branch. Afraid he would hurt her worse, Karen agreed to go with him.
He took her on foot between some houses and into a wooded area, intermittently dragging her by the arm and hitting her. He led her behind the fire station on West 70th Street and Turner Elementary School, until they could hear police sirens drawing near. At this point she convinced him to let her go, and she ran to the Diamond Shamrock gas station near the Inner Loop to call the police.
As noted, Karen sustained two broken bones in her neck and multiple leg injuries; she testified that she took 1½ months to recover. Mrs. Jeter sustained a broken pelvis and head injuries; she testified she could not walk for several months. Both Mrs. Jeter and Danielle testified that their cars were totaled in the collision.
Over the next few days, Detective Oster interviewed the three women in the Altima and Mrs. Jeter and, on June 29, obtained an arrest warrant charging Shaw with four counts of attempted first degree murder. Shaw turned himself in to police on July 14 and waived his Miranda rights. In a recorded statement, he insisted he was not mad at Karen and denied calling her multiple times at IHOP. He said the women had all been at his mother's house and they were leaving to eat at the Whataburger on Bert Kouns when he lost control of his mother's car and accidentally rear-ended the Altima. He denied dragging Karen into the woods or harming her in any way, and said he left the scene because he "panicked" and did not know she was hurt. He also denied forcing his mother into the Town Car; insisting she was unconscious "the whole time," he had no idea why she would say he had dragged Karen into the woods and hit her with a tree branch.
Shaw was initially charged with four counts of attempted first degree murder. In July 2005, the state amended the bill of information to charge him with the attempted second degree murder of Karen; the second degree kidnapping of Karen and of Mrs. Jeter; and the aggravated criminal property damage of Mrs. Jeter's Town Car and of Danielle's Altima. After a two-day trial, the jury returned the responsive verdict of attempted manslaughter of Karen, and convicted him as charged on the remaining counts.
The state then charged Shaw as a third felony offender. After an adjudication hearing, the court found him guilty as charged and sentenced him to 40 years at hard labor for the attempted manslaughter. The court also sentenced him to 80 years at hard labor, without benefits, for each count of second degree kidnapping, and 30 years at hard labor for each count of aggravated criminal damage to property. All sentences were to be served concurrently. After the court denied Shaw's motions for post verdict judgment of acquittal, new trial and reconsideration of sentence, Shaw took this appeal.

*523 Discussion: Sufficiency of the Evidence

By his first two assignments of error, Shaw urges the evidence was insufficient to sustain all convictions; ergo, the district court should have granted his motion for post verdict judgment of acquittal or new trial. Specifically, he contends the state failed to prove beyond a reasonable doubt that he had the specific intent to kill or inflict great bodily harm upon Karen or that he intentionally damaged both vehicles. In support he cites his own statement to police, in which he claimed the Town Car skidded on a wet road and accidentally rear-ended the Altima, and suggests that most of the damage to the Altima occurred after it left the road and struck a tree. He also contends the second degree kidnapping convictions cannot stand because "Karen was not injured until after the accident" and "Ms. Jeter admitted that she never resisted or told Shon that she did not want to leave."
The state responds that Shaw's use of a speeding car and then a tree branch proved his specific intent to kill Karen. The state argues that photographs of the wrecked Altima, showing its rear end crushed all the way to the back seat where Karen was sitting, undermine any claim that the accident was minor and the damage mostly the result of hitting a tree. Further, the state cites Mrs. Jeter's testimony (that Shaw struck her first with a telephone and then with his fists, and then shoved her into the Town Car) and that of the women in the Altima (that Shaw dragged the injured and protesting Karen into the woods) supplied every essential element of the kidnapping charges. Finally, the state cites testimony of Ms. Jeter and Marvette Jones that the Town Car accelerated before ramming the Altima as sufficient to refute any claim of an accident.
The standard of appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Sosa, XXXX-XXXX (La.1/19/06), 921 So.2d 94. The trier of fact may therefore accept or reject, in whole or in part, the testimony of any witness. State v. Updite, 38,423 (La.App. 2 Cir. 6/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229, and citations therein.
To support a conviction for attempted manslaughter, the state must prove the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal. State v. Mitchell, 39,905 (La.App. 2 Cir. 2/17/05), 894 So.2d 1240, writ denied, XXXX-XXXX (La.6/3/05), 903 So.2d 457. Specific intent is a state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow from his acts or omissions. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Martin, 39,846 *524 (La.App. 2 Cir. 8/17/05), 913 So.2d 863, writ denied, XXXX-XXXX (La.6/14/06), 929 So.2d 1267.
In State v. Mitchell, supra, this court found that accelerating an automobile in the direction of a pedestrian was sufficient to prove a specific intent to kill. In the instant case, Karen was not a pedestrian, but she was a backseat passenger in the Altima that Shaw rammed from behind. Detective Oster testified, and the crime scene photos showed, that the rear bumper of the Altima was pushed almost into the back seat. This evidence is sufficient to show a specific intent to kill Karen, as well as an overt act in furtherance of that goal.
To prove second degree kidnapping under the facts of this case, the state must prove that the defendant forcibly seized and carried a person from one place to another, and that the victim was physically injured or sexually abused. La. R.S. 14:44.1 A(3), B(1); State v. Davies, 35,783 (La.App. 2 Cir. 4/5/02), 813 So.2d 1262, writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 389. In his statement to Det. Parker, Shaw maintained that he had no argument with his mother before they got in the Town Car, and no knowledge of how she got hurt. However, Mrs. Jeter testified that her son beat her repeatedly with his fists and a telephone, and forced her against her will into the car; other witnesses corroborated that she did not willingly get into the Town Car with him. It is uncontested that Mrs. Jeter sustained a broken pelvis in the collision. This evidence is sufficient to prove the second degree kidnapping of Mrs. Jeter.
Similarly, Shaw told Det. Parker that he never laid a hand on Karen; however, he could not explain how she wound up at the Diamond Shamrock station. Notably, Karen, Mrs. Jeter, Danielle and Marvette uniformly testified that Shaw dragged Karen from the scene of the crash and, despite her obvious injuries, repeatedly thrashed her with a pine bough. This evidence is sufficient to prove the second degree kidnapping of Karen.
Aggravated criminal damage to property is defined as the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion. La. R.S. 14:55. In State v. Bates, 37,282 (La.App. 2 Cir. 10/16/03), 859 So.2d 841, writ denied, XXXX-XXXX (La.5/21/04), 874 So.2d 173, this court held that ramming a vehicle at an accelerated speed, and forcing that vehicle off the road and into a light pole, with the result that the occupants sustained cuts, bruises and concussions, was sufficient evidence from which a trier of fact could find the essential elements of aggravated criminal damage to property. The facts herein are virtually identical. Given the unanimous testimony of Karen, Mrs. Jeter, Danielle and Marvette, the crime scene photos and the testimony of Det. Oster, the jury could rationally find that this collision was no mere accident, and that the lives of Karen and Mrs. Jeter would be endangered.
This assignment of error lacks merit.

Illegal Sentence
By his third assignment of error, Shaw urges his sentences under the habitual offender statute are illegal. Citing State ex rel. Porter v. Butler, 573 So.2d 1106 (La.1991), he contends that multiple counts arising out of a single criminal act or episode cannot be enhanced under the statute, La. R.S. 15:529.1. He concludes that the sentences should be vacated and the case remanded for resentencing with the multiple offender bill applied to only one count.
*525 The state responds that State ex rel. Porter v. Butler, supra, is "no longer good law," as it was specifically overruled in State v. Johnson, 2003-2993 (La.10/19/04), 884 So.2d 568, and legislatively suppressed by 2005 La. Acts No. 218. The state shows that since the amendment, R.S. 15:529.1 B now provides, "Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section."
The state's position has merit. In State v. Johnson, supra, the court held that its earlier interpretation of the 1982 version of R.S. 15:529.1 was incorrect. The 2005 amendment in fact removed any sequential requirement for enhanced penalties in sentencing multiple offenders, if the convictions were obtained after October 19, 2004. While State v. Johnson did not explicitly overrule State ex rel. Porter, supra, it did overrule State ex rel. Mims v. Butler, 601 So.2d 649 (La.1992), which approved the rationale of State ex rel. Porter. As a result, the district court did not err in applying third felony enhancement to all five criminal charges arising out of Shaw's criminal conduct.[1] This assignment of error lacks merit.

Supplemental Assignments of Error
By pro se brief, Shaw has raised four supplemental assignments of error. The first urges that the trial judge erred in inquiring into Shaw's right to testify, and defense counsel frustrated that right, after he "unequivocally made known his desire that he will testify." He contends that the judge's questioning violated his constitutional rights under State v. Hampton, XXXX-XXXX (La.3/22/02), 818 So.2d 720. His second assignment urges that this error is "not amenable to harmless error analysis." Id.; State v. Dauzart, 99-3471 (La.10/30/2000), 769 So.2d 1206.
Shaw's argument lacks factual basis, as he stated on the record that he chose not to testify. Notably, both State v. Hampton and State v. Dauzart, supra, were applications for post conviction relief ("PCR"). Claims of ineffective assistance of counsel are more properly raised by application for PCR, as that procedure creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982). Shaw's brief is not entirely clear, but he appears to suggest that trial counsel was ineffective for failing to allow him to testify and for failing to object to the trial judge's inquiry. Given his comment, outside the jury's presence, that he elected not to testify, the instant record is simply insufficient to address Shaw's implicit claim of ineffective assistance. These assignments lack merit.
By his third supplemental assignment, Shaw urges the district court erred in sentencing him as a habitual offender. He contends, without elaboration, that the court "did not state for the record * * * what prior conviction or convictions will be used for sentencing enhancement." The habitual offender bill of information, however, alleged that Shaw pled guilty to possession of a Schedule II controlled dangerous substance in June 1994 and to unauthorized use of a movable in January 1998, thus making him a third felony offender. At the habitual offender hearing in August 2005, the state introduced copies *526 of these bills of information and court minutes without defense objection. Corporal Van Zandt qualified as an expert in fingerprint identification and confirmed that the prints on the prior bills matched Shaw's. Contrary to Shaw's contention on appeal, the district court clearly found the June 1994 and January 1998 guilty pleas to be valid predicate offenses. Shaw has not shown any irregularity under R.S. 215:529.1 or State v. Shelton, 92-3070 (La.7/1/93), 621 So.2d 769. This assignment lacks merit.
By his final supplemental assignment of error, Shaw urges the district court erred in designating a particular place of commitment. He shows that at sentencing, the court ordered him "remanded to the Deputy Sheriff for transfer to Department of Corrections[,] Angola." He contends this violated La. R.S. 15:824 A: "[A]ny individual subject to confinement in a state penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department." He concludes that the case should be remanded for resentencing.
In the recent case of State v. King, 41,083 (La.App. 2 Cir. 6/28/06), 935 So.2d 354, the district court sentenced the defendant as a second felony offender and remanded him "to the custody of the sheriff for transfer to the Department of Corrections, Angola." On appeal, the defendant contended the reference to Angola was error, citing R.S. 15:824 A. We found that as a second felony offender, subject to 49½ to 198 years at hard labor, the defendant was properly committed to the Department of Public Safety and Corrections regardless of the court's gratuitous reference to Angola. La. R.S. 15:824 C. "The use of the designation `Angola' at the end of the sentence was obviously used for emphasis only and was not in error." Id. Shaw's argument presents nothing to dissuade us from this conclusion. This assignment of error lacks merit.

Conclusion
On error patent review, we notice that the sentence for attempted manslaughter is illegally lenient in that it does not deny the benefits of probation, parole or suspension of sentence, as are the sentences for aggravated criminal damage to property in that they do not deny the benefit or probation or suspension of sentence. However, these omissions are automatically corrected by the operation of La. R.S. 15:301.1. State v. Cooper, 38,743 (La. App. 2 Cir. 9/22/04), 882 So.2d 657.
We have reviewed the entire record and find nothing else we consider to be error patent. For the reasons expressed, the convictions, third felony adjudication and sentences are affirmed.
AFFIRMED.
NOTES
[1] Although the jurisprudence prior to State v. Johnson was not uniform, some cases reasoned that R.S. 15:529.1 B prohibited the double-counting only of "predicate offenses" obtained on the same day and allowed the enhancement of multiple "instant offenses." See, e.g., State v. Normandin, 32,927 (La.App. 2 Cir. 12/22/99), 750 So.2d 321, writ denied, XXXX-XXXX (La.9/29/00), 769 So.2d 550; State v. Brooks, 99-478 (La.App. 3 Cir. 12/8/99), 756 So.2d 336, writ denied, XXXX-XXXX (La.5/25/01), 792 So.2d 750.