948 So.2d 335 (2007)
STATE of Louisiana, Appellee
v.
Fredrick Dewayne GRAY, Appellant.
No. 41,732-KA.
Court of Appeal of Louisiana, Second Circuit.
January 10, 2007.
*336 Louisiana Appellate Project, by Peggy J. Sullivan, Monroe, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, Geya D. Williams Prudhomme, Brady D. O'Callaghan, J. Dhu Thompson, Assistant District Attorneys, for Appellee.
Before BROWN, MOORE & SEXTON (Pro Tempore), JJ.
SEXTON, J.
This criminal appeal arises from the conviction in a bench trial of Defendant, Fredrick Dewayne Gray, for attempted simple kidnapping. The trial court sentenced him as a second-felony offender to three and a half years at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals. *337 Defendant's conviction is affirmed. His sentence is affirmed as amended, and the case is remanded for correction of the minutes.

FACTS
During the early morning hours of February 9, 2003, Deputy Gary Baird of the Caddo Parish Sheriff's Office responded to a 911 call on Hiawatha Street during which a resident there had stated that there was a female on his front porch screaming that someone tried to rape her. Deputy Baird testified for the State as to his investigation of the incident, including his conversation with the victim. She told him that someone tried to rape her and described the assailant as a black male of average size wearing dark pants and top. Deputy Baird noticed swelling on the victim's left eye.
According to Deputy Baird's testimony, the victim gave the following account of the events. The victim was in the parking lot of the Econo Lodge on Monkhouse Drive when Defendant offered her a ride home and "put" her in his vehicle. She did not know him, but accepted his offer to take her home. Deputy Baird's understanding was that she did get into the vehicle voluntarily. She told Defendant where she lived; but, as "the ride went on," she became uneasy and asked him to let her out of the vehicle. In response, Defendant told her she could get out if she wanted, but that he refused to stop the car. Defendant offered her money for sex and he offered her beer and wine to drink. Defendant threatened physical harm to her if she did not allow him to touch her. He proceeded to touch her breasts and vaginal area without her consent. When Defendant drove her to the parking lot at Lakeview Baptist Church on Tacoma Street, she was able to get out of the vehicle and run away.
The victim pointed out to Deputy Baird where Defendant's car was parked. The vehicle was empty. Soon thereafter, Deputy Baird saw a man matching the victim's description running in the road where Hiawatha Drive and Tacoma Street intersect. When he stopped the man, Defendant told him that he was out jogging because it was quiet and peaceful, in spite of the fact that it was dark and raining and that he knew no one in that area of town. After placing Defendant under arrest and receiving consent to a search from the owner of the vehicle, Deputy Baird found beer and wine in the vehicle.
Defendant eventually admitted that he had a companion in the vehicle with him, a female named "Deonshay," which was not the name of the victim. He admitted that he went to the Econo Lodge to pick up this friend, whom he had known for a little over a month. He was giving her a ride home when she asked him to stop the vehicle and let her out. After he let her out of the vehicle, he followed her and asked her what was wrong, but she told him nothing was wrong and would not talk to him. Defendant told Deputy Baird that he was out looking for her when they saw him running. Defendant denied touching the victim. In addition, through Deputy Baird's testimony, the State played a videotape depicting the weather conditions, the victim and her voice and Defendant being arrested.
The State presented the testimony of Don Adley, the person who called 911, and the owner of the house where the victim went for help. Mr. Adley testified that the victim was on his front porch, very upset, and saying that someone was after her. He noticed Defendant's vehicle driving by his house twice with the occupant shouting, "I love you."
According to the victim at trial, she was leaving a bachelorette party at the Econo *338 Lodge when Defendant drove up to her in the parking lot. She had met Defendant two months earlier through her cousin when he had given them both a ride to a party, but this was the only time she had ever seen Defendant before. She got in the car with Defendant because she thought he was going to give her a ride home. She realized that he was not going to take her home when he began driving to different places and started touching her. While Defendant was driving, he touched her breasts and put his hand down her pants, touching her vagina, without her permission. She tried to stop someone driving by, but Defendant told the driver that she was his girlfriend and that they were just having problems.
The victim testified that, once they arrived at the church parking lot, she was able to get out of the vehicle and run away. Defendant was not touching her at the time they were in the parking lot. Once she got away, she went to one house, but no one came to the door. She next went to Mr. Adley's home. While he was calling 911, Defendant came onto the front porch and hit her in the head when she refused to leave with him. He then ran away from the front porch, but kept driving by the house while she was waiting for law enforcement to arrive. She saw Defendant park his SUV down the street and run away shortly before law enforcement arrived.
Defendant testified on his own behalf. According to his testimony, he had left work and took a friend to the Econo Lodge when he saw the victim leaving. She asked him for a ride home and he knew her because he had met her once before. He insisted that he was driving on the back roads because he was not familiar with the interstate due to the fact that he just gotten out of prison after serving a sentence for forcible rape. The victim asked him for $50, then took $25 from his console without his consent and refused to put the money back. Then the victim got out of the car with his money after a struggle that included the victim also taking a ring off of his finger. He followed her to the house to demand his money and ring back, but in response, the victim threw it all on the ground. He then scooped up the money and was on his way back to his vehicle when law enforcement arrived. Defendant admitted being evasive with Deputy Baird because he was nervous due to the fact that he had only gotten out of prison nine months earlier.
Based upon the evidence presented at the bench trial, the trial court found Defendant guilty of attempted simple kidnapping as a responsive verdict to the original charge of simple kidnapping and found him not guilty of sexual battery.

DISCUSSION
Defendant contends that the evidence was insufficient to support his conviction of attempted simple kidnapping because there was no evidence that he intended to forcibly seize the victim and carry her from one place to another without her consent or that he committed an overt act in furtherance of that intention. Specifically, Defendant relies upon the fact that the victim voluntarily got into his vehicle. He submits that they struggled over the money the victim was taking from him and that there is a lack of evidence indicating that he tried to put the victim back in his vehicle after she got out of it.
The State argues that while the victim voluntarily entered Defendant's vehicle, her consent was vitiated at the point it became apparent to her that he was not driving her home, but, instead, taking her to another location to sexually molest her. It contends that Defendant refusing to *339 stop the car when the victim asked him to do so and hitting the victim in the head when she refused to leave Mr. Adley's house were overt acts in furtherance of his attempt to take her someplace against her will. To support its position, the State demonstrates the consistency between the victim's account of the offense and the testimony of Mr. Adley regarding her physical and mental condition at the time and his observation of Defendant driving by his house. It further emphasizes that Deputy Baird's observations corroborate the victim's account. Deputy Baird discovered beer and wine in Defendant's vehicle, which the victim had previously claimed that he offered to her, and observed swelling on the victim's left eye consistent with Defendant having struck her several times in the head, as she testified.
The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt, in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. Thus, the standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747. In the absence of internal contradictions or irreconcilable conflict with physical evidence, the testimony of one witness is sufficient support for a requisite factual conclusion if that witness is believed by the trier of fact. State v. Jones, 31,613 (La.App.2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434, citing State v. Ford, 28,724 (La.App.2d Cir.10/30/96), 682 So.2d 847, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writ denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
The offense of simple kidnapping is defined, in pertinent part, as "[t]he intentional and forcible seizing and carrying of any person from one place to another without his consent." La. R.S. *340 14:45(A)(1). To commit the offense of attempted simple kidnapping, Defendant must have had the specific intent to commit the offense of simple kidnapping while taking some action in furtherance of accomplishing that offense. La. R.S. 14:27(A). Specific intent is a state of mind existing when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. State v. Davies, 35,783 (La.App.2d Cir.4/5/02), 813 So.2d 1262, writ denied, 02-1564 (La.5/9/03), 843 So.2d 389, citing La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). Since specific intent is a state of mind, it need not be proved as a direct fact, and it may be inferred from the circumstances. State v. Davies, supra, citing State v. Graham, 420 So.2d 1126 (La.1982); State v. Fuller, 414 So.2d 306 (La.1982); State v. Doby, 540 So.2d 1008 (La.App. 2d Cir.1989), writ denied, 544 So.2d 398 (La.1989).
In the present case, the victim testified that she voluntarily got in the vehicle with Defendant because she thought he was going to give her a ride home, but that she asked him to stop the vehicle and let her go when she realized that he was not driving her towards home and when he began touching her in a sexual manner without her permission. Although Defendant claims that he could not have attempted to commit simple kidnapping because the victim voluntarily got into the vehicle with him, her consent ceased when she asked him to let her out of the vehicle. In State v. Logan, 213 La. 451, 34 So.2d 921 (1948), the supreme court found that the defendant committed simple kidnapping, even though the victim voluntarily got into the vehicle, when he refused to stop the vehicle after the victim asked him to do so:
We think, as did the trial judge, that the fact that the defendant did not lay hands on her until she endeavored to get out of the truck does not mean that force was not used in keeping her in the truck for by keeping her in the truck against her will while that vehicle was traveling at a rapid rate of speed constituted a forcible seizure just the same as if the accused had held her therein at the point of a gun without laying hands on her, and certainly no one would doubt that holding a person at the point of a gun does not constitute forcible seizure and detention. Consequently, when the defendant transported the prosecutrix under these conditions from the place where she wanted to get out of the truck, passed the road leading into Cotton Valley, to the point where she jumped or fell from the moving truck, all against her will, the added element of transportation makes this crime one of Simple Kidnapping. . . .
In State v. Davies, supra, this court similarly found that a kidnapping occurred even though the victims voluntarily got into the defendant's vehicle. In that case, the defendant refused to take the victims home after they pleaded with him to do so; and he, instead, drove to another location while threatening to kill them, demanding sex from them, fondling one of the victims and wielding a bat and knife as weapons. This court found that the testimony of the surviving victim to these facts was sufficient evidence to establish that the defendant had forcibly seized the victims and carried them from one place to another without their consent.
Therefore, the fact that the victim voluntarily entered Defendant's vehicle for a ride to her home does not preclude Defendant from being found guilty of attempted simple kidnapping. The victim's consent *341 to be in the vehicle ceased at the point she asked Defendant to stop the car and let her out. Defendant's actions of refusing to stop the car and continuing to drive constituted the forcible seizing and carrying of the victim from one place to another.
Several of Defendant's actions indicated his intent to commit simple kidnapping. First, he sabotaged her first attempt at help by telling the driver of a passing car that she was his girlfriend and they were just having problems. Then he pursued the victim after she escaped and struck her in the face when she refused to leave the Adley residence. Deputy Baird's observation of swelling around her left eye supports the victim's testimony. Further, Defendant continued to drive by before law enforcement arrived and was even then still on foot in the area near the victim. Accordingly, sufficient evidence exists for the trial court to find beyond a reasonable doubt that Defendant committed the offense of attempted simple kidnapping. We, therefore, affirm the conviction of Defendant for attempted simple kidnapping.
Defendant also attacks the enhancement of his sentence as a second-felony offender. He asserts that the State did not adequately prove the prior conviction or that he was the same person in the proffered prior conviction. Defendant claims that the State did little more than present paperwork to prove the prior conviction and that the photographs from the pen pack and the 48-hour affidavit were not sufficient to prove that he is the same person in the proffered prior conviction.
In habitual felony proceedings, when a defendant denies having a prior felony conviction, the State must establish the existence of the prior felony conviction and prove that the defendant is the person convicted in that earlier offense. State v. King, 41,083 (La.App.2d Cir.6/28/06), 935 So.2d 354. In State v. Shelton, 621 So.2d 769 (La.1993), the supreme court explained the process of proving prior felony convictions in habitual offender proceedings under La. R.S. 15:529.1, when that prior felony conviction is the result of a guilty plea:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (Footnotes omitted.)
The supreme court found that it was appropriate to shift the burden to the defendant after the state makes the initial showing that the defendant made the guilty plea with the representation of counsel because there is a "presumption of regularity *342 that attaches to final judgments." State v. Shelton, supra, citing Parke v. Raley, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992).
Proving that a defendant is the same person convicted in the earlier offense may be accomplished through different means, including the testimony of witnesses, expert testimony as to the fingerprints of the accused when compared to those in the prison record introduced or by photographs contained in the duly authenticated record. State v. Mays, 05-2555 (La.5/26/06), 929 So.2d 1231, citing State v. Brown, 514 So.2d 99 (La.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988); State v. Jones, 408 So.2d 1285 (La.1982); State v. Curtis, 338 So.2d 662 (La.1976); State v. King, supra, citing State v. White, 28, 095 (La.App.2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, and 98-0282 (La.6/26/98), 719 So.2d 1048; State v. Young, 27,237 (La. App.2d Cir.8/23/95), 660 So.2d 548; State v. Shepherd, 566 So.2d 1127 (La.App. 2d Cir.1990).
At the habitual offender proceeding in the present case, the State presented a certified copy of a bill of indictment showing that Defendant was charged with attempted aggravated rape, aggravated rape and burglary of an inhabited dwelling in Caddo Parish Docket No. 111,677. The State also presented a certified copy of the transcript for the prior conviction which showed Defendant's name. The transcript shows that Defendant pleaded guilty to the charge of attempted aggravated rape and the amended charge of forcible rape in exchange for dismissal of the burglary charge and a sentence of 20 years at hard labor without benefit of parole, probation or suspension of sentence.[1] The transcript of the colloquy shows that Defendant was informed and waived his right to a trial by jury, right against self-incrimination and right of confrontation. The state also presented certified documents from the Louisiana Department of Public Safety and Corrections which showed its inmate was released from prison on February 2, 2002, on the charges in Caddo Parish Docket No. 111,677. The documents describe the inmate as a black male born on March 25, 1961,[2] and contain a photograph of the inmate. The incident report and arrest report show that Defendant is a black male with a date of birth of March 25, 1961.
The trial court filed an Opinion thoroughly explaining its finding that Defendant was a second-felony offender. It found that Defendant was represented by counsel when he pleaded guilty to forcible rape in Docket No. 111,677 and that he knowingly and voluntarily waived his three Boykin rights. In finding that the State proved that Defendant was the same person convicted in Docket No. 111,677, the trial court expressly relied on the identity of Defendant's gender, race and date of *343 birth to those of the defendant in the prior conviction, and the resemblance of the photograph to Defendant.
Further, Defendant stated during his trial testimony that he had pleaded guilty to forcible rape in 1979 and that he had only been released from prison nine months before the incident in the present case. In State v. King, supra, this court held that a defendant's prior felony conviction was proved by his own admission along with the certified bill of information and minutes.
Review of the record shows that the State presented adequate evidence to prove the existence of the prior felony conviction and that Defendant was the same person in the prior felony conviction. Accordingly, the trial court did not abuse its discretion in adjudicating Defendant as a second-felony offender. We affirm the Defendant's adjudication as a second-felony offender.
Finally, we amend Defendant's sentence to correct the trial court's error in sentencing him without benefit of parole. The trial court sentenced Defendant as a second-felony offender, stating that the three-and-a-half-year sentence should be served "without benefit." The minutes reflect that the sentence should be served without benefit of parole, probation or suspension of sentence. Both Defendant and the State agree that it was improper to impose the sentence without benefit of parole. The sentencing provisions applicable to attempted simple kidnapping do not require the sentence to be served without benefit of parole. La. R.S. 14:27 & 14:45. Further, the sentencing provisions for second-felony offenders do not remove parole eligibility; rather, as a second-felony offender, Defendant is only deprived of the benefits of probation and suspension of sentence. La. R.S. 15:529.1(A)(1)(a) & (G). Accordingly, the sentence is amended to delete the prohibition on parole eligibility, and the case is remanded to the trial court for correction of the court minutes to reflect that Defendant is parole eligible.

CONCLUSIONS AND RECOMMENDATIONS
For the foregoing reasons, we affirm Defendant's conviction for attempted simple kidnapping. We affirm Defendant's sentence as amended and remand for correction of the minutes to reflect that Defendant is parole eligible.
CONVICTION AFFIRMED. SENTENCE AFFIRMED AS AMENDED AND REMANDED.
NOTES
[1] The Honorable Fred C. Sexton, Jr. was the trial judge for the First Judicial District Court in which Defendant entered his guilty plea on Docket No. 111,677. Judge Sexton now writes this opinion as judge pro tempore on this court. His acceptance of the guilty plea does not constitute performance of "a judicial act in the case in another court," which would require recusal under La. C. Cr. P. art. 671(A)(5). See State v. Yokum, 155 La. 846, 99 So. 621 (1923). Further, Defendant does not attack the propriety of Judge Sexton's acceptance of the guilty plea in the prior conviction, only the State's evidence in proving that Defendant was the defendant in Docket No. 111,677.
[2] The Certificate of Release shows the inmate's date of birth as March 26, 1961, but the other documents from the Louisiana Department of Public Safety and Corrections show the date of birth as March 25, 1961.